In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 05-4629 & 05-4520

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

JAYNE NGATIA,

*Defendant-Appellant,*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 1004—**Blanche M. Manning**, *Judge.*

ARGUED DECEMBER 7, 2006—DECIDED FEBRUARY 16, 2007

Before BAUER, MANION, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Jayne Ngatia pleaded guilty to intentionally importing heroin into the United States in violation of 21 U.S.C. § 952(a) and § 960(a)(1). In calculating her sentence, the district court increased the guideline range based on the quantity of heroin smuggled by other Kenyan women at Ngatia's direction and her role as a leader in the smuggling scheme. The district court then sentenced her below the advisory sentencing guideline range to 84 months' incarceration, which both the government and Ngatia challenge on appeal. We affirm.

**I. Background**

On October 14, 2003, Ngatia, a native of Kenya and a travel agent, embarked on a trip from Nairobi, Kenya to Chicago, Illinois to smuggle heroin. Before leaving Kenya, she swallowed numerous pellets of heroin and taped pellets of heroin to her body under her clothing. When she arrived at O'Hare International Airport, custom inspectors conducted a pat down search which revealed the pellets of heroin attached to her body. Suspecting that she had also smuggled heroin internally, inspectors took her to a hospital where they recovered additional heroin from her bowel movements. In all, inspectors recovered 691.1 grams of heroin.

Over the course of three sentencing hearings, the government offered evidence that Ngatia had recruited and trained other Kenyan women, Anne Njanja and Millicent Njogu, to work as heroin couriers. Njanja testified that she had met Ngatia through a travel agency and that Ngatia had taken her to a hotel room where she taught Njanja how to swallow heroin pellets. According to Njanja, Ngatia gave her an airline ticket to Newark, New Jersey, a destination address in Piscataway, New Jersey to declare on her customs form, and the address of a hotel in Detroit, Michigan where Njanja was to meet with a man named Chris. Following these instructions, Njanja met with Chris, expelled the drugs, and gave the heroin to him. Njanja was arrested in May 2004 at Hartsfield airport in Atlanta, Georgia while on an unrelated trip. On her customs form, she had listed as her destination an address that law enforcement had found included among Ngatia's papers, which prompted a secondary inspection. When taken to a medical center for x-rays, Njanja admitted that she had swallowed pellets of heroin. She subsequently identified both Ngatia and Chris from photo lineups and, later, identified Ngatia in court.

In a sentencing proffer, Njogu stated that she had met Ngatia through a man who had helped her obtain a passport. Like Njanja, Njogu agreed to transport heroin pellets to the United States for Ngatia. Njogu stated that Ngatia had taught her how to swallow heroin pellets and, in May 2002, Ngatia gave her sixty-three heroin pellets to swallow, a plane ticket to Detroit, a destination address in Boston, Massachusetts to declare on her customs form, and the address of a hotel where she was to meet Chris and deliver the heroin. Njogu successfully delivered the drugs to Chris and returned home. Njogu also stated that she had smuggled drugs into the United States an additional four times for Ngatia. In each instance, Ngatia had given Njogu the heroin, airline tickets, addresses to use on her customs form, and addresses where to bring the heroin. And with the exception of one trip to Chicago when she gave the heroin to a man named Id, she delivered the drugs to Chris each time. In November 2003, Njogu was caught smuggling heroin in an unrelated trip and arrested. A search of her belongings uncovered a promissory note from Ngatia. Njogu confessed to agents, telling them about her previous involvement with Ngatia and identifying for them both Ngatia and Chris from photo lineups.

The government also offered evidence that Ngatia herself smuggled heroin into the United States on six prior occasions. On these trips, Ngatia made short stays to the same destinations that Njogu had listed on her customs forms with periods of unexplained absences.

Additionally, the government offered Ngatia's safety valve interview with Special Agent Sharon Morissette. During the interview, Ngatia denied smuggling heroin on the earlier trips. She also failed to provide details concerning the heroin importation trip with which she was charged. She claimed to have been recruited to courier heroin by two individuals in Kenya whom she knew only

by first-names and who had taught her how to swallow heroin. She had no contact information for anyone in the United States and never mentioned recruiting others to import heroin or knowing Chris.

Special Agent Morissette testified that she had previously spoken to one Kafayat Abimbola-Amoo, who was housed with Ngatia at the Metropolitan Correctional Center. Amoo, who is also from Kenya, was incarcerated for importing heroin. According to Amoo, Ngatia had told her that she had received the heroin that she smuggled from a man named Akin and that she was to deliver the heroin to Akin's brother, Id, who lived in Chicago. At the final sentencing hearing, the government acknowledged that Amoo might not be a reliable witness and withdrew any reliance on her testimony.

In calculating Ngatia's sentence, the district court designated a base offense level of 28 and a criminal history category of I. After accounting for Ngatia's relevant conduct, which included the quantity of heroin smuggled by other Kenyan women at her direction and her role as a leader in the scheme, the district court increased the base offense level to 36. The district court declined to apply downward adjustments for acceptance of responsibility and the safety valve, finding that (1) the prior trips of Njogu and Njanja were relevant conduct; (2) the five prior trips of Njogu and one prior trip of Njanja were linked to the same scheme of importing heroin for which Ngatia was charged by common time frame, destinations, individuals, and method; (3) the government had not established that Ngatia's prior trips involved drug smuggling; (4) a two-level increase for leadership applied based on Ngatia's recruitment of Njogu and Njanja; and (5) a reduction for acceptance of responsibility was not applicable based on Ngatia's lies to the government in her post-arrest interviews. The district court then sentenced

Ngatia to 84 months' incarceration, which was below the guideline range of 188 to 235 months' incarceration.

## II. Discussion

### A. Relevant Conduct

The district court's findings of drug quantity, role in the offense, and whether uncharged offenses are part of the same course of conduct are reviewed for clear error. *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005); *United States v. Townsend*, 73 F.3d 747, 751 (7th Cir. 1996). Determinations of witness credibility are entitled to great deference and can virtually never be clear error. *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004).

In her appeal, Ngatia first challenges the district court's determination that the couriers' prior heroin importation trips were reliable evidence of relevant conduct and that the government failed to show this by a preponderance of the evidence. Ngatia advances a purely factual argument by citing the credibility weaknesses of the government's two primary witnesses: Njogu and Njanja.

The district court's sentencing determinations as to factual disputes must be based on reliable evidence, not speculation or unfounded allegations. *United States v. Romero,* 469 F.3d 1139, 1146 (7th Cir. 2006). We accord a sentencing court's credibility determinations exceptional deference. *United States v. Anaya*, 32 F.3d 308, 314 (7th Cir. 1994). Although Ngatia has maintained that she was not involved in Njogu's and Njanja's heroin importation trips, the district judge was entitled to credit the contrary version of events as described in the pre-sentence report. We defer to the district court's findings in that regard.

Ngatia next asserts that the evidence was insufficient to show that the couriers' prior trips were part of a common scheme or same course of conduct with her offense. Section 1B1.3(a)(2) of the Sentencing Guidelines calls for an increase in the defendant's base offense level to account for all "relevant conduct," which includes "all acts and omissions" committed by the defendant that are "part of the same course of conduct or common scheme or plan as the offense of conviction." Offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3(a)(2), app. n. 9. Offenses are part of the same course of conduct when they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. *Id.* In assessing whether two or more offenses are part of the same course of conduct, we consider factors that "point to a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity between the uncharged acts and the offense of conviction.'" *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996) (*quoting United States v. Sykes*, 7 F.3d 1331, 1336 (7th Cir. 1993)).

The district court aptly identified the factors that connected the prior heroin importations of Njogu and Njanja to the charged importation by the defendant. Ngatia recruited both couriers and trained them how to swallow heroin pellets. She provided heroin, airline tickets, directions, and destination addresses. The evidence showed that the defendant and her couriers had identical destination addresses as well. She instructed both Njogu and Njanja to deliver the drugs to Chris. Further, the proximity of the trips, involving the same drug from the

same country, indicates a common scheme. All of these factors point to a strong relationship between the un-charged conduct and the convicted offense. We find no abuse of discretion.

## B.  Leadership Enhancement

Ngatia also asserts that the evidence that she was a leader in the scheme was unreliable and not proven by a preponderance of the evidence. The district court's deter-minations of a defendant's role in the offense are reviewed for clear error. *Hankton*, 432 F.3d at 789. Under U.S.S.G. § 3B1.1(c), a defendant's offense level should be increased if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." Again, the district court aptly recognized Ngatia's role in recruiting and training other drug couriers. The evidence showed that both Njogu and Njanja had independently identified Ngatia as their recruiter. These statements were corrobo-rated by their identification of Ngatia and Chris from photo lineups and their similar accounts of their dealings with Ngatia. Therefore, we find that the district court did not err.

## C.  The Cross-Appeal

In its appeal, the government challenges the defendant's sentence as unreasonable. The district court sentenced Ngatia below the guideline range based on her rehabilita-tion efforts, as evidenced by her certificates of achievement while incarcerated; her shame, as reflected by a letter from a fellow inmate and Ngatia's own letter to the district court; and her good character, to which her friends and family attested. The district court found that a seven-year sentence was sufficient to satisfy the goals of sentencing: deterrence, incapacitation, and rehabilitation. The gov-

ernment asserts that Ngatia was not entitled to a below-range sentence because she lied to federal agents about her knowledge of the scheme to import heroin from Kenya. Additionally, the government asserts that common-place opinions from family members and friends cannot reasonably comprise the basis for the downward deviation.

When imposing a sentence, a district court must first calculate the advisory guideline range and then select a sentence within or outside the range in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir. 2006). The factors under Section 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defen-dant, the need for the sentence to reflect the seriousness of the offense, the need to promote the respect for the law, the need to provide just punishment for the offense, the need to afford adequate deterrence to criminal conduct and the need to protect the public from further crimes of the defendant. 18 U.S.C. §§ 3553(a)(1) & (2)(A-C). In the post-*Booker* era, we continue to review the district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005). "The farther the judge's sentence departs from the guidelines sentence (in either direction—that of greater severity, or that of greater lenity), the more compelling the justification based on factors in Section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reason-ableness of the sentence imposed." *United States v. Castro-Juarez*, 425 F.3d 430, 433 (7th Cir. 2005) (*quoting United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). However, the district court's choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. *United States v. Demaree,* 459 F.3d 791, 795 (7th Cir. 2006).

The district court observed that Ngatia's incarceration did not incapacitate the drug smuggling organization because two couriers had smuggled drugs into the United States after she was incarcerated. Considering that it is almost certain that Ngatia will be deported following her release, she will be incapacitated from further drug importation to the United States. As far as Ngatia's rehabilitation is concerned, the district court did not clearly err in finding that Ngatia had demonstrated a commitment to reform with her words and actions. The district court credited her statements of repentance, and Ngatia had already obtained numerous certificates of achievement by taking nearly every offered class at the Metropolitan Correctional Center. Although the district court accepted that Ngatia had coordinated the smuggling, this finding is in no way inconsistent with its decision to give her a sentence below the recommended guideline range. The district court's findings support the below-range sentence, resulting in a reasonable sentence. We find that the court did not err.

## III. Conclusion

Accordingly, Ngatia's sentence is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—2-16-07