In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 06-2252, 06-3605 & 07-1471

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

DAVIS OMOLE,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 670—**Ronald A. Guzmán**, *Judge.*

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADENIYI ADESOKAN and SAMUEL OMOLE,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 05 CR 670-2 & 05 CR 670—**Ronald A. Guzmán**, *Judge.*

———————

ARGUED NOVEMBER 6, 2007—DECIDED APRIL 15, 2008

———————

Before FLAUM, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. Davis Omole, Adeniyi Adesokan, and Samuel Omole pled guilty to various crimes arising from a complex identity-theft scheme that the three individuals carried out over two years. The district court sentenced Davis to 36 months' imprisonment, Adesokan to 78 months' imprisonment, and Samuel to 24 months' imprisonment. In this consolidated appeal, the government appeals Davis's sentence, which was 51 months below the low end of the Sentencing Guidelines range of 87-102 months. Adesokan appeals his sentence, arguing that it was unreasonable in light of Davis's considerably shorter sentence for essentially the same conduct. Samuel appeals his sentence on the ground that the district court incorrectly calculated the amount of loss attributable to him. We affirm the sentences of Adesokan and Samuel Omole. We conclude that Davis Omole's sentence was unreasonable and we vacate his sentence and remand for resentencing.

## I. HISTORY

Davis Omole and Adeniyi Adesokan were the chief architects of a complex identity-theft scheme through which they defrauded approximately 120 individuals between April 2003 and July 2005. Davis and Adesokan used stolen identities to buy cell phones, clothing, and other items and services. They held over 300 auctions on the online auction website eBay, where they listed for sale various items they did not own and did not intend to sell (cell phones, plasma televisions, stereos, electronic keyboards), under approximately 100 different eBay accounts they created with identities they had stolen. The

eBay auctions led to $254,000 in intended sales; approximately $90,000 was actually collected by the defendants. Davis and Adesokan continuously closed and opened eBay accounts, activated and deactivated cell phone and e-mail accounts, and changed mailing addresses and post-office boxes, to avoid getting caught.

Davis's younger brother, Samuel, was also involved in the identity-theft scheme. Davis and Samuel worked at stores where cell phones were sold and activated. Davis stole customers' credit-card and personal-identification information. Samuel used the stolen information to activate cell phones, some of which were used in the eBay scheme. Davis and Adesokan organized the eBay auctions and collected the victims' money. All three men used the stolen information to make personal purchases.

After they were arrested and charged, Davis pled guilty to one count of wire fraud, *see* 18 U.S.C. § 1343, and one count of aggravated identity theft, *see id*. § 1028(A)(a)(1). Adesokan pled guilty to one count of mail fraud. *See id*. § 1341. Samuel also pled guilty to one count of mail fraud. *See id*.

*A.  Davis Omole's Sentence*

Davis Omole's Presentence Investigation Report (PSR) calculated his total offense level for the wire-fraud count as 25, and his Criminal History Category as II. The probation officer indicated in the PSR that the guidelines range for the wire-fraud count was 63 to 78 months' imprisonment; the government recommended a sentence within that range. Regarding the aggravated identity-theft count, Davis was subject to a mandatory term of 24 months' imprisonment, which could not be served concur-

rently with another sentence. *See id*. § 1028A(a)(1), (b)(2);
U.S.S.G. § 2B1.6(a). Thus, the total term Davis faced under
the guidelines was 87 to 102 months' imprisonment.

During Davis's sentencing hearing, the judge noted that
the defendant had perpetrated a substantial and sophisti-
cated fraudulent scheme that involved planning, execu-
tion, and avoidance of detection over a long period of
time. He had cheated "dozens and dozens" of people out
of approximately $90,000, and intended to cheat them out
of much more had the scheme been carried out as planned.
The judge extensively scolded Davis for the crimes he
committed and the arrogance he displayed during court
proceedings.

> This defendant's record reflects an arrogance and an
> obvious feeling of superiority over the rest of us. In
> addition to that, not only the things he has done but
> the way he has done them reflects a total lack of
> empathy for his victims. Sending them e-mails ridicul-
> ing their stupidity for being cheated by him reflects a
> lack of feeling for other human beings that is absolutely
> alarming in a 20-year old. . . . And he's going to keep
> [defrauding victims] until and unless he develops
> some sense of what it takes to live with the rest of us
> without cheating us, stealing from us, and victimizing
> us.

After those scathing comments, the judge moderated
and explained that because Davis was only 20 years old,
and because this fraudulent scheme represented Davis's "
first substantial involvement with the law," he was depart-
ing downward with respect to the wire-fraud count and
imposing a sentence below the minimum guidelines
range. He sentenced Davis to a term of 12 months' impris-
onment for the wire-fraud conviction—51 months less than

the minimum advised by the guidelines. The judge then imposed the mandatory 24-month sentence for Davis's aggravated-identify-theft conviction, to run consecutively. Davis was ordered to pay restitution to the victims.

The judge then chastised Davis further:

> The sentence I have imposed upon you is substantially less than [the guidelines range], so you've caught a break that I'm not at all sure you deserve. Your conduct during the course of these proceeding[s] has been nothing but contemptuous of this Court. Your failure to abide by our conditions of release has been nothing but arrogant. Your continued participation in these schemes after having been convicted in State Court and awaiting the resolution of this case has been nothing but arrogant, and I'm going overboard to make an adjustment for your age and the incredible lack of understanding of life that some people at your age seem to reflect.

The judge ended his speech to Davis by encouraging him to do the right thing in the future, and explaining that he would be surrounded by people who do nothing but the wrong thing. The judge said, to conclude, "I'm giving you a chance. The choice is yours. Good luck."

### B. *Adeniyi Adesokan's Sentence*

Adesokan's PSR calculated his offense level as 24 and his Criminal History Category as III. At sentencing, the judge decided that the offense level was correct because it accounted for Adesokan's conduct, the intended loss of the scheme ($254,000)—whether realized or not—and Adesokan's failure to accept responsibility for his crime

and conduct. His Criminal History Category of III was also correct, and was based on a previous guilty plea for computer fraud; a probation violation; a previous guilty plea for unlawful possession of a fraudulent drivers' license, and then driving on a suspended or revoked license; and finally, a previous guilty plea for forgery. Adesokan's guidelines range was 63 to 78 months' imprisonment.

Both Adesokan and his mother testified at Adesokan's sentencing hearing. Adesokan argued that he was slowly withdrawing from the scheme. The judge listened to the arguments made by both parties for their respective sentencing recommendations, and explained that he had read and considered the character-reference letters that were submitted on Adesokan's behalf.

The judge did not credit Adesokan's withdrawal argument, and explained that if Adesokan wanted to relinquish his responsibility for the scheme he would have had to stop his participation in it, which he did not do. The judge went on to state that Adesokan had been given plenty of chances to change after his numerous convictions for similar conduct, but he failed to change. "You have had plenty of opportunities. You've been given probation and probation and probation. You have been told what you were doing was wrong by the courts, law enforcement, and your parents. You have been warned that you were headed towards disastrous consequences by all concerned, and you continued." The judge sentenced Adesokan to 78 months' imprisonment—the maximum sentence under the guidelines range—and ordered restitution.

*C. Samuel Omole's Sentence*

Samuel's PSR calculated his total offense level as 19, and his Criminal History Category as I. The guidelines range was 30 to 37 months' imprisonment. The government recommended a sentence within that range.

At his sentencing hearing, Samuel Omole argued that he was not involved in the comprehensive eBay scheme, but rather, was involved in a smaller, individualized scheme in which he alone made fraudulent purchases with stolen information that he got from his brother, Davis. Samuel argued that he never stole any identities while working at cell-phone dealers, and that he did not profit from the eBay scheme. Samuel also argued that, even if he was part of the broader eBay scheme, his involvement did not begin until after October 2004—when he had activated a phone that ultimately was used in the eBay scheme. Consequently, Samuel urged that the total intended loss attributable to him should be less than the amounts attributable to Adesokan and Davis. The government countered that it believed Samuel was involved in the scheme from the fall of 2003 because Adesokan had testified in front of a grand jury, and in a proffer-protected statement, that Samuel had activated a phone in December 2003 that was used in the eBay scheme.

The judge rejected Samuel's argument that he was not involved in the eBay scheme based on the fact that Samuel had activated a cell phone that was used in the scheme. The judge stated, "it's clear to me that he was helping this entire scheme and that his part of it, although you can call it a small part because the scheme was so big, was to provide the phones and to aid in other ways, and he did that." With respect to the loss-attribution argument, the judge credited Adesokan's sworn testimony to the grand

jury and stated that Samuel did not put forth evidence demonstrating that the statement was incorrect or that Adesokan was lying. The judge decided that Adesokan's testimony about Samuel's involvement in the scheme—beginning in the fall of 2003—was sufficient to meet the preponderance-of-the-evidence standard required for the judge to hold Samuel accountable for the losses caused throughout the entire scheme.

The judge sentenced Samuel to 24 months' imprisonment and ordered him to pay restitution to the victims. The judge said that he departed from the guidelines for Samuel because he had played such a minor role in the fraudulent scheme.

## II. ANALYSIS

On appeal, the government argues that Davis Omole's 12-month sentence for wire fraud—which was 51 months below the bottom of the guidelines range—is unreasonable. Adesokan appeals his 78-month sentence, arguing that, although the sentence is within the guidelines range, it is unreasonable in light of Davis's 36-month sentence for essentially the same conduct. Samuel Omole appeals his 24-month sentence on the ground that the district court erred in its calculation of the loss attributable to him.

We review sentences for their reasonableness, *United States v. Booker*, 543 U.S. 220, 260-63 (2005), under an abuse-of-discretion standard, *Gall v. United States*, 128 S. Ct. 586, 597 (2007). A sentence that falls within a properly calculated advisory guidelines range is presumed reasonable. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007); *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007). On the other hand, there is not a "presumption of unreasonable-

ness for sentences outside the Guidelines range." *Gall*, 128 S. Ct. at 595.

In imposing a sentence outside the guidelines range, a judge need not provide "extraordinary" justifications. *Id.* at 595. But, he must "give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* Although the degree of variance outside of the guidelines is a pertinent consideration on review, the Supreme Court has rejected the application of mathematical formulas that use "the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595; *see also United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008).

A sentencing judge undertakes a two-step process when calculating a defendant's sentence. *See Miranda*, 505 F.3d at 791; *United States v. Robinson*, 435 F.3d 699, 700-01 (7th Cir. 2006). The judge is first required to calculate the proper advisory guidelines range. *Gall*, 128 S.Ct. at 596 ("[T]he Guidelines should be the starting point and the initial benchmark."). Then, after hearing the parties' arguments, the judge must consider the factors enunciated in 18 U.S.C. § 3553(a) to decide whether the defendant's sentence should fall within that guidelines range. *Id.*; *Miranda*, 505 F.3d at 791 ("Although the guidelines are treated as advisory after *Booker*, the application of section 3553(a) is mandatory."); *United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007); *Robinson*, 435 F.3d at 700-01.

Sentencing judges are directed in § 3553(a) to consider:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing,

namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

*Rita*, 127 S. Ct. at 2463.

After a judge decides on the defendant's sentence, he must explain his reasoning. *Gall*, 128 S. Ct. at 597. Although "the sentencing court is not required to issue a detailed oral or written opinion in every case," *Wachowiak*, 496 F.3d at 749, it must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing," *Gall*, 128 S. Ct. at 597; *see also Rita*, 127 S. Ct. at 2456, 2468 ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."). If the judge chooses a sentence below or above the guidelines, he must proffer a sufficient justification for the divergence. *Gall*, 128 S. Ct. at 597. "[A] major departure should be supported by a more significant justification than a minor one." *Id.*

We now consider each of the defendant's appeals in turn.

### A.  Davis Omole

In reviewing Davis's sentence, we first consider whether the judge committed a procedural error. *Gall*, 128 S. Ct. at 597; *United States v. Gordon*, 513 F.3d 659, 666 (7th Cir. 2008). We ask whether the judge properly calculated the guidelines range; analyzed the factors set forth in § 3553(a); based the sentence on accurate facts; and ex-

plained the sentence and the justifications for an above- or below-guidelines sentence. *Gall*, 128 S. Ct. at 597; *Gordon*, 513 F.3d at 666. In Davis Omole's case, the judge noted the properly calculated guidelines range to be 63 to 78 months' imprisonment for the wire-fraud conviction, and 24 months' imprisonment for the aggravated identity theft conviction, to run consecutively. The judge listened to the parties' arguments at the hearing and considered the § 3553(a) factors—some explicitly, and others implicitly. *See Gall*, 128 S. Ct. 586, 599 ("Since the District Judge correctly calculated and carefully reviewed the guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). The judge noted Davis's personal characteristics, including his young age (20 years) and his lack of serious involvement with the law. He expounded on Davis's character flaws—his extreme arrogance, his lack of empathy, and his self-centeredness. He discussed the offense characteristics, noting the sophisticated, enduring nature of the fraudulent scheme that cheated many people out of their "hard-earned money." The transcript reveals the reasons behind the judges' below-guidelines sentence. We find no procedural error.

Our next step is to review the substantive reasonableness of the sentence under the deferential abuse-of-discretion standard. *Gall*, 128 S. Ct. at 597; *Gordon*, 513 F.3d at 666. This totality-of-the-circumstances analysis requires that we defer to the sentencing judge, who considers each defendant as an individual and decides sentences on a case-by-case, rather than wholesale, basis. *Gall*, 128 S. Ct. at 597-98. We recognize that the sentencing judge is in the best position to apply the § 3553(a) factors to the individual defendant, and that the judge sees things we cannot see,

assesses in real-time the credibility of witnesses and defendants when we cannot, and develops insights from the various bits and pieces of information that he comes across in the course of a case that nonetheless are not reflected in the record. *See Gall*, 128 S. Ct. at 597-98; *Gordon*, 513 F.3d at 666.

Because the "contours of substantive reasonableness review are still emerging," *Wachowiak*, 496 F.3d at 750, we cannot target a fixed point at which a sentence turns from reasonable to unreasonable, or vice versa. *Id.* at 751. "The concept of substantive reasonableness contemplates 'a range, not a point.'" *Id.* (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). A variant sentence based on factors that are particularized to the individual defendant may be found reasonable, but we are wary of divergent sentences based on characteristics that are common to similarly situated offenders. *See id.* at 750 ("A nonguidelines sentence premised on factors that are common to offenders with like crimes may reflect a simple disagreement with the guidelines; *Booker* did not authorize courts to find that the guidelines themselves (or the statutes on which they are based) are unreasonable." (internal quotation marks and citations omitted)).

Turning to Davis's sentence, there is a sizeable difference between the advisory range and the sentence imposed by the judge. Davis's sentence for the wire-fraud conviction was just 12 months' imprisonment—81% lower than the low end of the guidelines range.[1] As such, the district

---

[1] We include the percentage for purposes of illustration, and refrain from using the mathematical variance in our reasonableness determination. *See Gall*, 128 S. Ct. at 595.

judge had to enunciate persuasive reasons, based on the factors listed in § 3553(a), for the variance. *See Gall*, 128 S. Ct. at 596-97; *Wachowiak*, 496 F.3d at 749; *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005). Looking at the judge's dialogue concerning Davis, however, we are struck by his negative tone. The judge severely chastised Davis, saying he demonstrated "a lack of feeling for other human beings that is absolutely alarming in a 20-year old"; that his conduct had been "nothing but contemptuous of this Court"; that his failure to follow his release conditions and his continued participation in the fraudulent schemes after being convicted in state court was "nothing but arrogant." Instead of making a persuasive case for a substantially below-guidelines sentence, the judge stated a strong case for just the opposite.

Perhaps the judge saw something in this defendant that we are unable to glean from the record. As previously discussed, sentencing law not only allows, but *requires* judges to take individualized characteristics into account. *See Gall*, 128 S. Ct. at 597. At the same time, the judge must articulate reasons that assure us that the sentencing process is a reasoned one. *Rita*, 127 S. Ct. at 2469. The judge cited the defendant's young age and his lack of substantial involvement with the law as the reasons for the low sentence. Davis's age, while a personal characteristic a judge is allowed to consider under §3553(a), is not unique to Davis, and does not by itself convince us that Davis deserves this much-reduced sentence. The defendant's lack of "substantial involvement with the law" also fails to persuade us. For one, we are aware of the fact that the defendant had two previous state convictions for driving on a suspended license, a state felony conviction for Internet fraud in 2004, and a state conviction for

knowingly possessing a fraudulent driver's license in 2004. The sentencing judge even indicated that Davis continued participating in the identity-theft scheme after he was convicted in state court for the same conduct. Davis's conviction background hardly appears to us to call for a reduced sentence.

At sentencing, the judge did not highlight Davis's rehabilitative potential or other factors that would support a below-guidelines sentence. Instead, the judge commented on the defendant's extreme arrogance, his contempt for the court, and his utter lack of feeling for other human beings. The picture the judge painted for us is one of an offender who deserves the punishment the law prescribes. *See, e.g.*, *United States v. Roberson*, 474 F.3d 432, 434 (7th Cir. 2007) ("One might have expected these factors to push his sentence to the top of the guidelines range or even above it . . . .").

The judge may have leaned toward a lighter sentence for Davis's wire-fraud conviction to somehow compensate for the 24-month sentence Congress mandated for aggravated identity theft, which must run consecutively to other sentences. 18 U.S.C. § 1028A(a)(1), (b)(2). Had the judge even slightly factored this into his decision, however, he would have violated 18 U.S.C. §1028A(b)(3), which prohibits courts from reducing the sentence of a connected crime to "compensate for, or otherwise take into account, any separate term of imprisonment imposed [for Aggravated Identity Theft]." We have held that sentencing judges are not permitted to reduce an underlying sentence just because an add-on sentence for a related crime carries with it a fixed minimum sentence. *See Roberson*, 474 F.3d at 436.

Davis's situation is similar to the defendant's in *United States v. Roberson*, 474 F.3d at 433-36. There, a 19-year old pled guilty to bank robbery and to using a firearm in a crime of violence. *Id.* at 433. He was sentenced to one month's imprisonment for the bank-robbery conviction (the low end of the guidelines range was 46 months), and a mandatory 84 months' imprisonment for the firearm offense, to run consecutively. *Id.* at 433-34. The judge explained that because she could not adjust the mandatory 84-month consecutive sentence, she had "no alternative but to adjust the 46 month guideline part of the sentence so that the sentence, as a whole, is reasonable." *Id.* at 434. On appeal, we viewed the judge's exercise of discretion as representing a disagreement with Congress about the appropriateness of a sentence for a given crime, and we rejected her approach. *Id.* at 436-37. Even though the Sentencing Guidelines are advisory, judges are not allowed to simply ignore the guidelines ranges. *Id.*

The sentencing judge in Davis's case said it best himself when he said to Davis: "[t]he sentence I have imposed upon you is substantially less than [the guidelines range], *so you've caught a break that I'm not at all sure your deserve*." The judge also admitted that he was "going overboard" to make an adjustment for Davis's age and the lack of understanding that people of his age seem to reflect. Without a compelling justification for the "break" Davis caught at sentencing—which the judge in this case did not provide—the 12-month sentence for wire fraud can only be viewed as substantively unreasonable. *See id.* at 435-37.

We come to this conclusion even as we recognize that the district court mentioned a few mitigating factors in a document that was provided to the parties after sentencing. In this document, the judge listed as his "reasons for

departure," in addition to Davis's young age, the fact that Davis was a student in college, his history of good grades in high school, and his past participation on his high-school football and chess teams. He indicated that Davis's father was murdered in 1999, and that Davis had real potential for rehabilitation—"beyond what the court ordinarily sees." The judge felt as though "seven or eight years in jail would go a long way towards destroying that potential."

These comments directly contradict the denigrating statements made at sentencing, and only further our conclusion that the sentence was unreasonable as we are left with widely divergent and seemingly irreconcilable pictures of this defendant. We also note that the judge's sentiment that a lengthy imprisonment would go a long way toward destroying Davis's potential is "completely speculative." *See Roberson*, 474 F.3d at 435-36; *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007).

We are not saying that any below-guidelines sentence for Davis would have been unreasonable. *See Goldberg*, 491 F.3d at 674. However, based on the sentencing transcript and the clearly disparaging comments the judge made about Davis, we find that the district court abused its discretion by imposing the 12-month sentence, and therefore we vacate the sentence and remand for resentencing.

### B. Adeniyi Adesokan

Adesokan argues on appeal that his 78-month sentence was unreasonable and thus illegal, even though it was within the correctly calculated guidelines range, because

it "exceeded his virtual twin Mr. Omole's by five and one-half years and over 600% without any lawful justification." Adesokan's argument is premised on the assumption that Davis Omole's 12-month sentence is reasonable; Adesokan's entire brief focuses on the discrepancy between his sentence and that of Davis, and the perceived injustice of widely disparate sentences for similar codefendants who participated in the same scheme. Seeing as we have already decided that Davis Omole's sentence was substantively unreasonable, Adesokan's appeal is effectively doomed.

This court refuses to view the discrepancy between sentences of codefendants as a basis for challenging a sentence. "We will not disturb the appealing defendant's sentence even when a co-conspirator's sentence is lenient." *United States v. White*, 406 F.3d 827, 837 (7th Cir. 2005). We will only "disturb a sentence based on an unjustifiable disparity between co-defendants . . . if it 'actually creates a disparity between the length of the appellant defendant's sentence and all other similar sentences imposed *nationwide.*' " *Id.* (quoting *United States v. Simpson*, 337 F.3d 905, 909 (7th Cir. 2003) (emphasis added)); *see also United States v. Davila-Rodriguez*, 468 F.3d 1012, 1014 (7th Cir. 2006) ("[W]e reject Davila-Rodriguez's argument that his sentence is unreasonable when compared to the sentences imposed on other defendants in this case because the kind of disparity with which [18 U.S.C.] § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case." (internal quotation marks and citations omitted)).

But even if we decided to compare the sentences of Adesokan and Davis in our review for reasonableness,

Adesokan would still lose—we find no unreasonableness in the judge's imposition of Adesokan's sentence; rather, we find the judge erred with respect to Davis Omole's sentence. Adesokan's sentence was within the properly calculated guidelines range—at the very high end. As such, his sentence is presumed reasonable. *Rita*, 127 S. Ct. at 2462; *Miranda*, 505 F.3d at 791.

In this case, the judge found that the PSR properly calculated Adesokan's offense level and criminal-history category. The sentencing transcript shows that the judge considered the testimony and the parties' arguments. He also took into account the character-reference letters submitted on Adesokan's behalf. He looked at Adesokan's offense history, and his lack of rehabilitation following his previous convictions: "You've been given probation and probation and probation. . . . and you continued." The judge noted that Adesokan's convictions were even more "pathetic" because he comes from a good home with parents who care about him. The judge said that based on the totality of the circumstances, he decided on a sentence of 78 months' imprisonment. The judge made no procedural error in deciding Adesokan's sentence, and the sentence is not substantively unreasonable. Adesokan perpetrated a large fraud on numerous victims, depriving them not only of money, but also of the sense of personal security.

The guidelines range for Adesokan's offense, while advisory, reflects the Sentencing Commissions' judgment as to the sentencing range that best carries out its congressional mandate to further the objectives of § 3553(a). *See Rita*, 127 S. Ct. at 2463. "An individual judge who imposes a sentence within the range recommended by the guidelines thus makes a decision that is fully con-

sistent with the Commission's judgment in general." *Id.* at 2465; *see also Gall*, 128 S. Ct. at 594. Such sentences are presumed reasonable, and in this case, the within-guidelines sentence is in fact reasonable. *See United States v. Hurn*, 496 F.3d 784, 791 (7th Cir. 2007) ("Hurn has not convinced us that his sentence is an exception to the general rule that a Guidelines sentence is reasonable.").

*C.  Samuel Omole*

Samuel Omole appeals his below-guidelines sentence, claiming that the court erroneously calculated the loss amount attributable to him, thereby placing him in a higher guidelines range than Samuel had hoped for. The judge found by a preponderance of the evidence, *see United States v. Hale* , 448 F.3d 971, 988 (7th Cir. 2006), both that Samuel was involved in the broader eBay scheme, and that he was involved in it from December 2003.

  Samuel specifically faults the judge's reliance on Adesokan's grand-jury testimony, during which Adesokan stated that Samuel had activated three phones in December 2003 that were used in the eBay scheme. Adesokan's testimony constitutes hearsay, but judges are allowed to rely on hearsay evidence during sentencing so long as that evidence is reliable and the defendant is afforded a reasonable opportunity for rebuttal. *United States v. Barnes*, 117 F.3d 328, 337 (7th Cir. 1997); *United States v. Francis*, 39 F.3d 803, 810 (7th Cir. 1994). The judge was clear to note that Samuel had the opportunity to cross-examine Adesokan in order to rebut his testimony: "You are perfectly free to have an evidentiary hearing at the sentencing and bring him here and have him testified"; "you are not precluded even now from presenting any

evidence in any form that you wish in the sentencing hear[ing]."

In reviewing the district court's reliance on hearsay testimony under an abuse of discretion standard, *see Barnes*, 117 F.3d at 337, "[w]e accord a sentencing court's credibility determinations exceptional deference." *United States v. Ngatia*, 477 F.3d 496, 500 (7th Cir. 2007). Samuel argued that Adesokan had an incentive to lie about Samuel's involvement, and that Adesokan was not trustworthy because he had lied before in court proceedings. The judge considered these arguments, but ultimately disagreed and decided that Adesokan's grand-jury testimony was reliable. The judge believed that there was no motive for Adesokan to lie to the grand jury and that it would not have been profitable for him to do so. Ultimately the judge decided that it was "more probably true than not that what Mr. Adesokan said [was] accurate and correct." He based this conclusion on "all of the details, the circumstances and all of the things that have been shown."

Even though Samuel claims that he was not involved in the eBay scheme until much later in time, the district judge "was entitled to credit the contrary version of events as described" by Adesokan. *Id.* We defer to that finding, and reject Samuel's argument that the judge abused his discretion in this regard.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the sentences of Adeniyi Adesokan and Samuel Omole and we VACATE Davis Omole's sentence and REMAND for resentencing.