NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued April 16, 2009
Decided June 3, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| Nos. 08-3485 & 08-3489 | Appeals from the United States District Court for the Western District of Wisconsin |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 08 CR 49 |
| v. | |
| | Barbara B. Crabb, *Chief Judge*. |
| HOLLY KING AND BRIAN UNDERWOOD, *Defendants-Appellants*. | |

**O R D E R**

Holly King and Brian Underwood pleaded guilty to conspiring to possess pseudoephedrine with the intent to manufacture methamphetamine. The district court sentenced King and Underwood to 60 months' and 120 months' imprisonment, respectively. The defendants appeal their sentences, and we affirm.

I.

Holly King and Brian Underwood lived in a house with their three-year-old son and King's nine-year-old son. On February 15, 2008, law enforcement officials received an anonymous tip that methamphetamine was being manufactured in an unattached garage next to their house. Police officers checked out the premises and smelled a strong odor emanating from the garage. Later that day, an anonymous neighbor informed police that he believed the garage contained a methamphetamine laboratory. The neighbor told police he had observed hoses and tubes in the garage and a strong odor from the garage had burned his nose. The tipster also told officers that Underwood had yelled at him for entering the garage and had threatened him with a .45 caliber pistol.

After obtaining a search warrant, police officers searched the garage and house while King and her children were at home. Police discovered various equipment used to make methamphetamine in the garage. Inside the home, the officers found a loaded .45 caliber pistol in a holster hanging from a light fixture at the top of the basement stairs. Police also found methamphetamine and marijuana in the master bedroom. After the search, King told the officers she was addicted to methamphetamine, knew Underwood had been making methamphetamine in the garage for the past year, and had purchased Sudafed and other ingredients used in the manufacturing process for him. King also stated she knew about the .45 caliber firearm but had not seen it lately.

About the same time as the search, police stopped Underwood in his automobile. Underwood confessed he was manufacturing methamphetamine in the garage, though only for personal consumption—not distribution. Underwood also admitted he owned the .45 caliber pistol but denied threatening a neighbor with it. He told police the gun was in the stairwell.

King and Underwood were indicted for and pleaded guilty to conspiring to possess pseudoephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(c)(1) and 846. At sentencing, the district court found that both defendants qualified for a two-level enhancement under U.S.S.G. § 2D1.11(b)(1) for possession of a dangerous weapon in connection with the conspiracy. King and Underwood objected to that enhancement, and the government objected to the application of that enhancement to King.

After reducing Underwood's Guidelines range by three levels for acceptance of responsibility, the court imposed a 120-month sentence, which was in the middle of the

advisory Guidelines range. For King, the district court reduced her Guidelines range by three levels for acceptance of responsibility and by two levels for being a minor participant in the conspiracy and imposed a below-Guidelines range sentence of 60 months. The defendants appeal their sentences.

II.

King and Underwood both argue that the district court erred in applying the two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.11(b)(1). We review a district court's application of an enhancement for possession of a dangerous weapon for clear error. *United States v. Idowu*, 520 F.3d 790, 793 (7th Cir. 2008).

Section 2D1.11(b)(1) of the Guidelines provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Application Note 1 to § 2D1.11 states that "[t]he adjustment in subsection (b)(1) should be applied if the weapon was present, unless it is improbable that the weapon was connected with the offense." This means that the government must prove by a preponderance of the evidence that the defendant possessed the weapon, after which the burden shifts to the defendant to show it was improbable the weapon was connected to the underlying offense. *See id.*

Underwood points to Application Note 3 to § 2D1.1 to support his claim that the enhancement under § 2D1.11(b)(1) only applies to drug traffickers—not persons, like Underwood, who possessed precursor ingredients with the intent to manufacture methamphetamine for only their personal use. That note provides, in part, that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 app. n.3. Underwood's argument is a non-starter because the district court enhanced his sentence under § 2D1.11, not § 2D1.1. Moreover, the application notes for § 2D1.11 do not contain any provision similar to the part of Application Note 3 to § 2D1.1 on which Underwood relies. Therefore, because the application of 2D1.11(b)(1) is not limited to drug traffickers, the district court did not clearly err in enhancing Underwood's Guidelines range under that section.[1]

---

[1] The government proved Underwood's possession of the .45 caliber firearm by a preponderance of the evidence, and Underwood did not show it was improbable the gun was connected to the conspiracy.

King argues that the district court erred in finding she, too, possessed the .45 caliber gun and enhancing her sentence under § 2D1.11(b)(1). "We have defined 'possession' to include firearms possessed by coconspirators in furtherance of the conspiracy that the defendant could have reasonably foreseen." *United States v. Strode*, 552 F.3d 630, 635 (7th Cir. 2009) (citing *United States v. Acosta*, 534 F.3d 574, 588 (7th Cir. 2008)). King relies on *United States v. Vold*, 66 F.3d 915 (7th Cir. 1995), to argue that she could not have reasonably foreseen Underwood's possession of the .45 caliber pistol in furtherance of their conspiracy. In *Vold*, the district court enhanced a defendant's Guidelines range for possession of a firearm, concluding that his coconspirator's possession of the weapon was reasonably foreseeable to him based on the coconspirator's use of the weapon and the fact that weapons are commonly used in drug manufacturing conspiracies. 66 F.3d at 920. We vacated Vold's sentence because the government did not present any evidence he knew about his coconspirator's firearm, nor was the risk inherent in a drug manufacturing conspiracy sufficient to establish the reasonable foreseeability of the coconspirator's possession. *Id.* at 921.

Unlike the defendant in *Vold*, King admitted she knew her co-conspirator Underwood owned a .45 caliber pistol. She also said she knew about the illegal methamphetamine lab in the garage. In addition, the gun was found hanging from a light fixture at the top of the basement stairwell, from where it was accessible to defend the methamphetamine operations in the garage. In light of these undisputed facts, the district court did not clearly err in concluding that Underwood's possession of the gun in connection with their conspiracy was reasonably foreseeable to King.

Underwood next claims the district court's enhancement for possession of a dangerous weapon cannot stand in light of the Supreme Court's holding in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), that the Second Amendment secures an individual's right to have handguns in the home for self-protection. Because Underwood forfeited this objection by failing to raise it in the district court, our review is for plain error. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008). Under that standard, Underwood must show there was 1) an error 2) that was plain 3) that affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If these three conditions are met, we may exercise our discretion to rectify the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

Underwood's *Heller* argument is a variant of an argument we rejected in *United States v. Jackson*, 555 F.3d 635 (2009). In *Jackson*, the defendant, relying on *Heller*, attempted

to withdraw his guilty plea for possessing a firearm in furtherance of a drug-trafficking offense by claiming that he actually possessed the gun for self-protection. 555 F.3d at 636. We observed that *Heller* held that citizens have a right to keep and bear arms for "*lawful* self-protection, not for *all* self-protection," and stated that "[t]he Constitution does not give anyone the right to be armed while committing a felony, or even to have guns in the next room for emergency use should suppliers, customers, or the police threaten a dealer's stash." *Id.* Therefore, because "there is no constitutional problem with separating guns from drugs," *id.*, the district court's enhancement of Underwood's Guidelines range for possession of a dangerous weapon was not erroneous as long as there was some link between the conspiracy and the weapon. The district court did not err in finding that connection based on the neighbor's report that Underwood had threatened him with a .45 caliber firearm when Underwood caught him snooping around the garage. In addition, police found a .45 caliber gun hanging at the top of a stairwell inside the house where it was readily accessible for protecting the methamphetamine lab in the garage.

Underwood also argues that, by sentencing him to a term of imprisonment that fell in the middle of the advisory Guidelines range, the district court treated that range as mandatory. We review this threshold procedural issue de novo. *United States v. Carter*, 530 F.3d 565, 577 (7th Cir. 2008). There is no merit to Underwood's argument. The district court acknowledged Underwood's Guidelines range was advisory and considered the § 3553(a) factors in determining his sentence. Moreover, the court allowed Underwood to argue the § 3553(a) factors and why a sentence below the Guidelines range was warranted. Thus, it is clear that the district court did not treat the Guidelines range as mandatory, nor did it commit any other procedural error.

Underwood also claims that a lower sentence was warranted under a proper evaluation of the § 3553(a) factors, which is a challenge to the substantive reasonableness of his sentence. We review the substantive reasonableness of a sentence under the abuse of discretion standard. *United States v. Omole*, 523 F.3d 691, 698 (7th Cir. 2008) (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007)). A sentence that falls within a correctly calculated Guidelines range is presumed reasonable. *United States v. Johnson*, 534 F.3d 690, 696 (7th Cir. 2008) (citing *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007)). A defendant may rebut this presumption by showing his sentence is unreasonable in light of the § 3553(a) factors. *Id.* There is no question that the district court meaningfully considered the § 3553(a) factors, including the nature of the offense and Underwood's history and characteristics. Underwood argues that the fact King, who had a similar criminal background, received a lesser sentence for the same conduct indicates his sentence was unreasonable. However, a discrepancy between coconspirators' sentences is not a valid basis for challenging a

sentence. *Omole*, 523 F.3d at 700. Only if a defendant's sentence diverges from all similar sentences imposed nationwide will the court disturb the sentence. *Id.* Underwood has not made that showing. Moreover, the district court's determination that King was a minor participant in the conspiracy accounts for the disparity in the defendants' sentences. Because Underwood has not rebutted the presumptive reasonableness of his sentence, we find no abuse of discretion by the district court.

## III.

The district court did not clearly err in enhancing the defendants' Guidelines ranges under § 2D1.11(b)(1). In addition, the district court did not commit plain error in applying that enhancement to Underwood's range in light of *Heller*. Lastly, the district court did not treat Underwood's Guidelines range as mandatory in deciding the length of his sentence, and Underwood has not rebutted the presumptive reasonableness of that within-Guidelines sentence. For these and the foregoing reasons, we AFFIRM.