In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1028

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

RODNEY BROWN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 07-CR-20080—**Joe Billy McDade**, *Judge.*

ARGUED OCTOBER 29, 2009—DECIDED JUNE 22, 2010

Before FLAUM, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* When Rodney Brown pleaded guilty to distributing more than five grams of crack cocaine, it looked as if he was about to go to prison for a long time. Brown had a prior drug conviction, and so he faced a mandatory minimum sentence of 120 months' imprisonment. To make matters worse, his two previous convictions for aggravated assault qualified him as a career offender for purposes of § 4B1.1

of the U.S. Sentencing Guidelines, and this bumped up his recommended guidelines sentence to 262-327 months' imprisonment.

At the sentencing hearing, the district court limited itself to making a few negative remarks about Brown's character and capacity for change. It then surprised the parties by sentencing Brown to the lowest possible point available to it, the 120-month mandatory minimum, a full 142 months below the low end of the guidelines range. In its terse explanation of the sentence, the district court mentioned only Brown's age (40 years old), the short length of his previous state sentences, and the conditions of his upbringing.

The government has appealed the sentence. Although a sentence so far below the recommended guidelines range lies within the court's power, and may even have been justified in this case, the record is too spare to support that conclusion at this point. We therefore vacate Brown's sentence and remand for resentencing.

# I

In the spring of 2007, the Champaign (Illinois) Police Department enlisted the services of a confidential informant to help it go after the local drug dealers. After the informant tipped the authorities to Brown's dealings in cocaine, officers had the informant engage in a controlled purchase of crack cocaine from Brown. Video and audio recording devices captured Brown handing over 13.3 grams of crack in exchange for $400 in pre-recorded currency.

On August 7, 2007, a grand jury indicted Brown on two charges: distributing five grams or more of crack cocaine and possession with intent to distribute crack cocaine. See 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C). A few months later, Brown entered into a written plea agreement with the government and pleaded guilty to the distribution count. The Probation Office prepared a presentence report (PSR) that placed Brown's guidelines range between 262 and 327 months of imprisonment, based on an offense level of 34 and a criminal history category of VI. Brown faced such a lengthy sentence largely because of his considerable rap sheet, which qualified him as a career offender. (Indeed, without the career offender enhancement, his criminal history would have remained at VI, but his offense level would have dropped to 21.) The district court adopted the PSR's calculation of the guidelines range.

The PSR also furnished some details about Brown's life, which had been a difficult one. Brown grew up in a fatherless household, living for most of his youth with his mother and maternal half-sisters. He began abusing alcohol and smoking marijuana at age 12 or 13. By the time he was 14 years old, he had been convicted of theft. Brown reported that he had been abused as a child by his mother and bullied by other neighborhood kids. While his mother acknowledged that she disciplined Brown, she maintained that the "discipline never hurt anybody." She did admit, however, that on one occasion she "had to beat the shit out of him," but she asserted that the beating did not inflict permanent physical harm on Brown.

At the sentencing hearing, Brown reiterated the difficulties he had experienced growing up and he touched upon the extenuating circumstances associated with his past crimes. During his allocution, Brown also emphasized his commitment to change his ways upon his release from prison. In addition, Brown offered letters that family members had written attesting to his positive traits.

After listening to Brown, the district court expressed deep skepticism about Brown's sincerity. The court noted, "I don't believe that right now you take full responsibility of what you are and what you have done. I don't believe you have a commitment that from this day forward, I am going to change my life and lead a different life." The judge went on to observe that the rosy image of Brown set forth in his family members' letters was inconsistent with the story sketched out in the PSR. The court added, "I think that you are trying to run a con now to say what you feel is necessary to get a reduced sentence. . . . I think that you still see yourself as a victim who has the right to do anything you do because you are the victim. I don't think you're a role model."

When it came time to sentence Brown, however, the district court inexplicably took a different direction. Despite its stern lecture, it announced a sentence of 120 months' imprisonment, the statutory mandatory minimum. Its explanation for this sentence was as follows, in its entirety:

> Based on the fact that you are 40 years old now, the longest period of imprisonment you spent prior to

now has been more or less two years in prison on one or two occasion and given the history and circumstances of your upbringing, I feel that a sentence to the mandatory minimum sentence would be sufficient but not more than what's necessary to serve the purpose of sentencing.

Later, in its written statement of reasons for imposing a below-guidelines sentence, the court repeated that the sentence imposed was "sufficient to meet all of the relevant sentencing goals set forth in 18 U.S.C. § 3553(a)." The government has appealed.

## II

In assessing the reasonableness of a sentence, we engage in a two-step inquiry. See *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). First, we determine whether the district court made a procedural mistake in formulating its sentence. *Id.* To ensure the procedural reasonableness of a sentence, a district court judge must "properly calculate[] the guidelines range; analyze[] the factors set forth in § 3553(a); base[] the sentence on accurate facts; and explain[] the sentence and the justifications for an above- or below-guidelines sentence." *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008). Once we are satisfied that the sentence is procedurally sound, we consider whether it is substantively reasonable. *Jackson*, 547 F.3d at 792. Our review of the latter point is deferential. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). While an appellate court may treat a sentence within the guidelines range as presumptively

reasonable, the converse is not true: there is no "presumption of unreasonableness for sentences outside the Guidelines range." *Id.* at 595; *United States v. Parr*, 545 F.3d 491, 505 (7th Cir. 2008) (explaining that appellate "review of a nonguideline sentence is extremely deferential").

On appeal, the government has focused its efforts on challenging the procedural reasonableness of Brown's sentence. It has no trouble conceding that the district court properly calculated the guidelines range, but it vigorously objects to the adequacy of the court's explanation for deviating so drastically from that range. Brown counters that the court appropriately relied upon three valid sentencing considerations to support its decision to impose the mandatory minimum sentence.

The governing law is well settled. While the district court must explain its decision to impose a sentence outside the guidelines range, it need not give an "extraordinary" justification. *Gall*, 128 S. Ct. at 597 (noting that the district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"). A district court judge that imposes an "unusually lenient or harsh" sentence must give the departure from the guidelines "serious consideration" and provide "sufficient justifications" to support her sentencing determination. *Id.* "[A] major departure should be supported by a more significant justification than a minor one." *Id.* Yet the strength of the justification required for a particular departure cannot be dictated by a mechanical calcula-

tion of the percentage of the departure from the applicable guidelines range. *Id.*

While the district court invoked several relevant sentencing factors, its brief explanation for departing from the guidelines fell far short of what *Gall* requires. In justifying the 120-month sentence, the district court began by citing the fact that Brown was 40 years old as something that supported a lower sentence. Yet the court never made any attempt to explain how Brown's age was pertinent to any legitimate sentencing consideration. See 18 U.S.C. § 3553(a). We find it pointless to speculate about the judge's reasons. If the district court fails to explain itself sufficiently, the rationale for deferential appellate review is weakened because this court cannot tell how particular facts influenced the district court's assessment of the totality of the circumstances. *Gall*, 128 S. Ct. at 595.

The district court did not make matters any clearer when it referred to the relatively short length of Brown's previous stints in state prison. Perhaps the judge was willing to accept defense counsel's argument that although Brown had not been deterred by his previous sentences, which had never lasted more than two years, nothing more than a jump to a ten-year sentence was required to deter Brown from committing another crime. The government, however, suggests that the court instead may have felt that a lengthy federal sentence would have created an unwarranted sentencing disparity in light of Brown's short state sentences; this, it argues, would be a misinterpretation of the concept of unwar-

ranted disparities for purposes of federal sentencing. The government is correct: the reference in § 3553(a)(6) to "unwarranted sentence disparities" does not invite a comparison between the defendant's earlier sentences and the present one; it requires a comparison to the way this offender is treated as compared to similarly situated persons in other federal courts, when they are being sentenced for the same crime. We cannot tell whether the district court had in mind the latter rationale or the former one.

We are also left without any guidance about how the court was weighing "the history and circumstances of [Brown's] upbringing." Most importantly, the court never clarified the severity of Brown's childhood abuse. Although Brown claimed to have been beaten by his mother, his testimony at the sentencing hearing was equivocal at best, and his mother confessed to only one serious beating. Putting aside these allegations of abuse, there is relatively little in Brown's background that would support a 142-month departure from the guidelines.

The district court not only failed adequately to explain its rationale for its sentencing decision; it also offered a significant number of observations that would have made more sense as justifications for a lengthier sentence. The court criticized Brown for continually claiming to be a victim and failing to take responsibility for what he had done. The court expressed open skepticism about Brown's chances for rehabilitation, when it stated that it did not believe that Brown had made a

commitment to change his life and become a different person.

The contrast between the tone of the court's words and the ultimate sentence imposed is reminiscent of our decision in *Omole*, 523 F.3d at 697. In that case, the district court sentenced the defendant to 12 months of imprisonment, which was 51 months below the minimum advised by the guidelines. *Id.* at 694. In justifying the sentence, the district court cited the defendant's young age, his insubstantial criminal record, his success in school, his upbringing, and his rehabilitative potential. *Id.* at 700. Yet during the hearing, the court "severely chastised" the defendant on a number of grounds. *Id.* at 698 (explaining that the district court "commented on the defendant's extreme arrogance, his contempt for the court, and his utter lack of feeling for other human beings"). In concluding that the defendant's sentence was unreasonable, we dismissed the district court's justifications as insufficient and emphasized that the judge had failed to explain the "irreconcilable pictures" it painted of the defendant. *Id.* at 699-700.

We find little in this case to distinguish it from *Omole*. In fact, the district court in that case provided a more elaborate explanation to justify a substantially smaller deviation from the guidelines. *Id.* at 694, 700. Thus, we have no trouble concluding that the district court failed here to articulate the necessary justification for such a sizable departure from the guidelines. *Gall*, 128 S. Ct. at 597. In reaching this decision, we make no comment on the substantive reasonableness of the sentence imposed,

which is a matter that we leave open for the court on remand.

*   *   *

We VACATE Brown's sentence and REMAND for resentencing in accordance with this opinion.