In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-1948

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WADE BONK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:17-cr-10061-JES-JEH-1 — **James E. Shadid**, *Judge.*

_____

ARGUED JUNE 1, 2020 — DECIDED JULY 24, 2020

_____

Before RIPPLE, WOOD, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* A grand jury returned a superseding indictment charging Wade Bonk and his two codefendants, Darcy Kampas and Timothy Wood, with conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Wood and Kampas pleaded guilty to the conspiracy count in accordance with their plea agreements. Mr. Bonk also pleaded guilty to the conspiracy count, but without the benefit of a cooperation plea agreement. He was sentenced to 262 months' imprisonment. Final judgment was entered,[1] and Mr. Bonk timely filed a notice of appeal.[2]

# I

# BACKGROUND

## A.

From May until September 2017, Mr. Bonk conspired with Kampas and Wood to distribute ice methamphetamine.[3] Some of the 1.5 kilograms of ice methamphetamine for which Mr. Bonk was held responsible was allegedly for his personal consumption.[4] Mr. Bonk fronted and sold the rest in varying quantities to distributors.

Mr. Bonk was arrested on September 13, 2017, on an outstanding warrant.[5] The conspiracy ended two days later,

---

[1] The district court's jurisdiction is premised on 18 U.S.C. § 3231.

[2] Our jurisdiction to review Mr. Bonk's sentencing claim is secure under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3] Note (C) to the drug quantity table, in U.S.S.G. § 2D1.1, defines "[i]ce" as the weight of "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity."

[4] R.156 at 96 ("Mr. Bonk reported that up towards 44 percent of that was for personal use.").

[5] R.133 ¶ 16.

when Kampas and Wood, who were under surveillance for suspected drug trafficking, were stopped for speeding. After seeing suspected methamphetamine in plain view, the officer conducted searches of the vehicle, of both Wood's and Kampas's persons, and of Kampas's purse. The searches resulted in the seizure of about 111 grams of ice methamphetamine.

In addition to the federal drug conviction that is central to this appeal, Mr. Bonk has numerous other previous convictions, many of them violent in nature. Namely, he has two felony convictions for battery; two convictions for bodily-harm domestic battery; and convictions for a hate crime, unlawful restraint, aggravated driving under the influence, obstruction of justice, theft of a motor vehicle, driving on a revoked license two separate times, violation of bail bond, and unlawful possession of a firearm by a convicted felon.[6]

Indeed, his Presentence Investigation Report ("PSR") reflected thirty-four criminal history points, which is almost three times the minimum criminal history points required to trigger the criminal history category of VI.[7] His final total offense level of thirty-five, combined with his criminal history category of VI, resulted in an guidelines range of 292 to 365 months' imprisonment.[8] Because Mr. Bonk's criminal history

---

[6] *Id.* ¶¶ 40, 44, 46–47, 49, 51–52, 54–56, 58–60.

[7] *Id.* ¶ 62; *see also* U.S.S.G. Sentencing Table.

[8] R.133 ¶ 120.

did not include a prior felony drug offense, he faced a man-datory minimum sentence of ten years in prison.[9]

At the sentencing hearing, defense counsel submitted that the guidelines range for methamphetamine mixture should be used, a range of 188 to 235 months, instead of the higher guidelines range for ice methamphetamine.[10] He not-ed mitigating factors, including that the conspiracy was rela-tively short in duration; that Mr. Bonk personally consumed up to one-third of the drugs; and that Mr. Bonk was a first-time drug offender. He further contested the unfairness of the sentencing differences between ice methamphetamine and a methamphetamine mixture and contended that the career-offender guideline is not based on empirical evi-dence.[11]

The Guidelines distinguish between a methamphetamine mixture that is less pure and ice methamphetamine, a higher-purity methamphetamine. Mr. Bonk noted that the recommended sentence for a defendant in possession of ice methamphetamine is longer than the recommended sentence for a defendant in possession of a methamphetamine mixture because "[t]he fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and

---

[9] *Id.* ¶ 119.

[10] R.156 at 110.

[11] *Id.* at 98–104.

proximity to the source of drugs."[12] He contended, however, that "it is not unusual anymore for anybody to have pure meth in their possession. So what the courts have started to do is they have taken this into consideration, and that's why you are seeing more and more sentences of meth offenders come in below the guideline range."[13] The Government, in contrast, asked the court to view the conspiracy "through the lens of [Mr. Bonk's] criminal history" that included "13 felony convictions," "[m]any of them violent in nature."[14] The Government also noted that Mr. Bonk's extensive criminal history and the large amount of drugs that he trafficked resulted in a "very rare" scenario where the guidelines calculations resulted in a higher adjusted offense level than the level required by the career-offender guideline.[15]

The district court sentenced Mr. Bonk to 262 months' imprisonment followed by five years of supervised release. The court entered final judgment, and Mr. Bonk filed a timely notice of appeal.

## B.

On August 15, 2019, we appointed counsel for Mr. Bonk. On September 1, 2019, counsel filed an emergency motion with the district court requesting access to all sealed docu-

---

[12] *Id.* at 98 (citing U.S.S.G. § 2D1.1, Application Note 27(C)).

[13] *Id.* at 100.

[14] *Id.* at 77–78.

[15] *Id.* at 78.

ments for Mr. Bonk and both of his codefendants. He stated that he required access to all the sealed documents "for the crucial purpose of analyzing, or ruling-out, whether disparity and/or excessiveness of sentencing was committed by the trial court in separately sentencing the three defendants, upon their pleas."[16] The district court called counsel to inform him that he had access to the sealed documents that had been available to Mr. Bonk's counsel in the district court.[17] On this call, counsel confirmed that he was requesting "access to each and every sealed document in this case."[18]

The district court granted the motion in part and denied the motion in part. Because the Pretrial Services Report had been disclosed to trial counsel, the district court ordered the Clerk's Office to make the Pretrial Services Report available to counsel. The district court further noted that counsel's request for the Presentence Investigation Reports for Mr. Bonk was moot because he already had access to them. Although counsel made no specific request for it, the district court ordered the Clerk's Office to make the Third Revised Presentence Investigation Report available to counsel if he lacked access.

The court denied access to documents such as the Sentencing Recommendations for Mr. Bonk because they "are confidential and are not disclosed unless otherwise ordered

---

[16] R.162 at 2.

[17] R.163 at 2.

[18] *Id.*

by the presiding judge."[19] With respect to a handful of the sealed documents relating to Kampas and Wood, the court explained that "[m]any of the requested documents are simply original signed versions of publicly available documents."[20] With respect to the remaining documents relating to Kampas and Wood, the court ruled that counsel had failed to "'make a specific showing of need for access to the document[s].'"[21]

On September 7, 2019, counsel filed an amended emergency motion with the district court.[22] He reiterated that it was "imperative and beyond question that [he] requires access to all sealed documents for the two co-defendants' actions … for the crucial purpose of analyzing, or ruling-out, whether disparity and/or excessiveness of sentencing was committed by the trial court in separately sentencing the three defendants."[23] He submitted, "[t]hat specific need cannot and need not be explicated with 'more specificity.'"[24] The district court denied the motion with respect to every request except the request for the plea agreements and accompanying exhibits for Kampas and Wood; because counsel

---

[19] *Id.* at 3.

[20] *Id.* at 4.

[21] *Id.* (quoting *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989)).

[22] R.165.

[23] *Id.* at 1–2.

[24] *Id.* at 2.

would have had access to these documents if he had proceeded to trial, the court directed the Clerk's Office to make them available.[25] In denying the rest of the requests, the district court explained that it did

> not believe [counsel's] cursory argument—that access is needed to all sealed documents relating to codefendants Kampas and Wood so counsel can analyze whether the sentence imposed on Defendant Bonk was disparate or excessive compared to the sentences of his codefendants—raises to the level of a "compelling, particularized need for disclosure."[26]

Mr. Bonk renewed his request by motion in this court. After the Government responded and Mr. Bonk replied, one of our colleagues, sitting as motions judge for that period, denied Mr. Bonk's motion.[27]

## II

## DISCUSSION

### A.

We first examine whether we have jurisdiction to consider whether the district court erred in denying counsel access to all sealed documents in Mr. Bonk's case and the cases of

---

[25] R.168 at 4–5, 9.

[26] *Id.* at 9 (quoting *Corbitt*, 879 F.2d at 239).

[27] *See* App. R.25.

his codefendants. The answer to this question is straightforward: we do not have jurisdiction.

We begin by setting forth the principles that must guide our inquiry. Federal Rule of Appellate Procedure 3 provides in relevant part that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal" and that the notice "must … designate the judgment, order, or part thereof being appealed … ." Fed. R. App. P. 3(a)(1), (c)(1)(B). Rule 4(b)(1)(A)(i) of the Federal Rules of Appellate Procedure provides in relevant part that, "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days *after* … the entry of *either the judgment or the order being appealed*." Fed. R. App. P. 4(b)(1)(A)(i) (emphasis added); *see also Manrique v. United States*, 137 S. Ct. 1266, 1270 (2017). Thus, "[t]o secure appellate review of a judgment or order, a party must file a notice of appeal from that judgment or order." *Manrique*, 137 S. Ct. at 1271.

The Supreme Court has stated that "a notice [of appeal] and its contents are jurisdictional prerequisites." *Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012).[28] Mr. Bonk filed his notice of

---

[28] The Supreme Court has warned us not to make non-jurisdictional issues jurisdictional. *See Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Even if we were not convinced that the requirement to file a notice of appeal is jurisdictional in nature, it is at least a mandatory claim-processing rule. Mandatory claim-processing rules are not jurisdictional. They "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 435. The Supreme Court held that, where "[t]he Government timely raised petitioner's failure to file a notice of appeal … [,] 'the court's duty to dismiss the appeal was mandatory.'" *Manrique v. United*

(continued … )

appeal on May 17, 2019, "from the conviction, judgment, and order of the district court … entered on May 15, 2019, sentencing the Defendant … ."[29] This notice therefore brought to this court all matters occurring on or before the date of final judgment. The district court's September 5, 2019, order denying the emergency motion to gain access to sealed documents is therefore not included in his notice of appeal.[30]

We liberally construe the rules of procedure, including Federal Rule of Appellate Procedure 3. *Smith v. Barry*, 502 U.S. 244, 248 (1992); *Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 624 (7th Cir. 1993). "Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Badger Pharmacal, Inc.*, 1 F.3d at 624 (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17 (1988)).

---

( … continued)

*States*, 137 S. Ct. 1266, 1272 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 18 (2005)). Here, we are satisfied that filing a notice of appeal from the district court's order denying Mr. Bonk's emergency motion is a jurisdictional requirement.

[29] R.137 at 1.

[30] There is no doubt that, after Mr. Bonk filed his notice of appeal, the district court retained jurisdiction to decide ancillary matters such as whether the appellate counsel was entitled to view the sealed record documents. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1240 (7th Cir. 1986) (explaining that the district court retains jurisdiction to decide issues "in aid of the appeal"); *see also United States v. Ramer*, 787 F.3d 837, 838 (7th Cir. 2015) (per curiam) (collecting cases).

That is, a deficient notice of appeal will not deprive us of jurisdiction where "the intent to appeal from the contested judgment may be inferred from the notice [of appeal]." *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001).[31]

We have held that the intent to appeal from a particular judgment may be inferred where the judgment occurred before the notice of appeal was filed or where the judgment is obviously related to the judgment that is mentioned in the notice of appeal. *See, e.g.*, *Moran Foods, Inc. v. Mid-Atlantic Market Dev.*, 476 F.3d 436, 440–41 (7th Cir. 2007) (holding that jurisdiction existed because the notice of appeal mentioned the district court's order that, in effect, brought up for review the court's *earlier* quasi-interlocutory order (emphasis added)); *see also United States v. Taylor*, 628 F.3d 420, 424 (7th Cir. 2010) (holding that the defendant's "intent to appeal from both components of his sentencing package may fairly be inferred from his notice of appeal, despite the fact that he only included one case number" where "[b]oth sentences arose from the *same set of facts*" (emphasis added)). Neither of these exceptions are applicable here; Mr. Bonk seeks to appeal from an order that was issued *after* he filed his notice of appeal, and, the order, which addresses appellate counsel's emergency request for access to all documents, is not obviously related to the sentencing order from which he appeals.

---

[31] We also have held that jurisdiction exists despite a technical failure to comply with Rule 3 where the notice of appeal does not mislead or otherwise prejudice the appellee. *Harvey v. Town of Merrillville*, 649 F.3d 526, 528–29 (7th Cir. 2011).

We would have jurisdiction over this order only if Mr. Bonk had filed a second notice of appeal in conformity with Rules 3 and 4 that included the district court's ruling on the emergency motion. Alternatively, he could have amended the original notice of appeal to include this emergency motion. Although "[t]he court of appeals may, in its discretion, overlook defects in a notice of appeal *other* than the failure to timely file a notice," "[i]t may not overlook the failure to file a notice of appeal at all." *Manrique*, 137 S. Ct. at 1274. Mr. Bonk "did not file a defective notice of appeal … , but rather failed altogether to file a notice of appeal … ." *Id.*

Mr. Bonk was required to—but did not—file a separate notice of appeal regarding the district court's order denying his request to access all the documents in his case and in the cases of his codefendants. "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith*, 502 U.S. at 248. "[N]oncompliance is fatal to an appeal." *Id.* We do not have jurisdiction to review the district court's denial of Mr. Bonk's request.[32]

## B.

Finally, we conclude that there is no merit to Mr. Bonk's complaint about the reasonableness of his sentence.

---

[32] As noted above, one of our colleagues, sitting as a motions judge for that period, denied Mr. Bonk's motion. *See* App. R.25. Mr. Bonk has waived review of our colleague's decision because he does not ask us to review it. *See* Appellant's Br. 10 ("[T]he assignment of errors herein are from the district court, not the circuit court."); *see* Fed. R. App. P. 27(c) ("The court may review the action of a single judge.").

We review the substantive reasonableness of the sentence for an abuse of discretion. *United States v. Smith*, 860 F.3d 508, 514 (7th Cir. 2017). Our review of the reasonableness of the sentence "is limited; we are to ensure that 'the district judge imposed the sentence for reasons that are logical and consistent with the § 3553(a) factors.'" *United States v. Wachowiak*, 496 F.3d 744, 754 (7th Cir. 2007), *abrogated on other grounds by Nelson v. United States*, 555 U.S. 350 (2009) (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)). We will "uphold a sentence so long as the judge offers an adequate statement of his reasons consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Porraz*, 943 F.3d 1099, 1104 (7th Cir. 2019); *see United States v. Fogle*, 825 F.3d 354, 358 (7th Cir. 2016) (explaining that the sentencing court's "explanation need not be exhaustive" (citation omitted) (internal quotation marks omitted)). Because Mr. Bonk's sentence falls below the guidelines range, we presume that his sentence is substantively reasonable. *United States v. Patel*, 921 F.3d 663, 672 (7th Cir. 2019) ("[W]e presume that a within-Guidelines sentence is reasonable: 'it follows that a sentence below the range also is presumptively not too high.'" (citation omitted)). This presumption is rebuttable, but only if the defendant "show[s] that the sentence does not comport with the factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 672 (citation omitted).

In his opening brief, Mr. Bonk contends that the district court erred by "not granting [him] a downward departure" from the guidelines range, and he urges us "to remand … for re-sentencing" for that reason.[33] The district court, however,

---

[33] Appellant's Br. 11, 39.

imposed a sentence that was below the guidelines range. The Guidelines provided a suggested range of 292 to 365 months' imprisonment;[34] the district court sentenced him to 262 months' imprisonment.[35]

In his reply brief, Mr. Bonk clarifies that he meant to state "that the district court erred in not sentencing [him] to a *greater* downward departure, the requested 15 ½ years to 19 ½ years."[36] Thus, on appeal, Mr. Bonk's argument appears to be that the district court erred in not adopting the range of 188 to 235 months' imprisonment as requested by defense counsel at sentencing.[37]

The district court, in explaining its sentencing decision, provided an adequate explanation that permits meaningful appellate review and promotes the perception of fair sentencing. *See United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). Before imposing the sentence, the district court acknowledged that the conspiracy did not last long, "but it moved a lot of drugs in the process."[38] The court characterized Mr. Bonk's upbringing as "bad," but it noted that Mr. Bonk had been provided with resources in the past and he had been "either unable or unwilling to take advantage of

---

[34] R.133 ¶ 120.

[35] R.156 at 119.

[36] Reply Br. 5–6 (emphasis added).

[37] R.156 at 110 ("Your Honor, we are asking you to adopt the guideline range for meth mixture, which is 188 to 235 months.").

[38] *Id.* at 116.

them."[39] The court said that because of his criminal history, Mr. Bonk "didn't give [his attorney] much to work with" in asking for "a much lower sentence."[40] "[Y]our criminal activity," the court observed, "doesn't just consist of drugs or a gun case but also consists of much violence. The violence consists of punching and beating people, generally in a domestic relationship situation, pushing and hitting females[,] as well as hitting someone in a bar" because of the victim's race.[41]

Ultimately, the court explained that it was imposing a sentence of 262 months' imprisonment, less than the guidelines range but more than what Mr. Bonk had requested, due to the nature and extent of Mr. Bonk's past criminal conduct, combined with the nature of the offense of conviction. There is nothing substantively unreasonable about this sentence.

### Conclusion

We affirm the judgment of the district court.

AFFIRMED

---

[39] *Id.* at 117.

[40] *Id.*

[41] *Id.* at 117–18.