In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 19-2174, 19-2185 & 19-2186

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

ADEL DAOUD,

*Defendant-Appellee.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 1:12-cr-00723, 1:13-cr-00703 & 1:15-cr-00487
**Sharon Johnson Coleman**, *Judge.*

———————————

On Petition for Rehearing and Rehearing En Banc

———————————

DECIDED MARCH 5, 2021

———————————

Before SYKES, *Chief Judge*, EASTERBROOK, RIPPLE, KANNE,
ROVNER, WOOD, HAMILTON, BRENNAN, SCUDDER, ST. EVE, and
KIRSCH, *Circuit Judges*.

ST. EVE, *Circuit Judge*. On consideration of the petition for
rehearing and rehearing en banc filed by defendant-appellee

on December 30, 2020, the judges on the original panel voted to deny rehearing. A judge in regular active service requested a vote on the petition for rehearing en banc. A majority of judges in regular active service voted to deny rehearing en banc. Judge Kenneth F. Ripple voted to deny rehearing but did not take part in the vote to rehear en banc. Judges Ilana Diamond Rovner, Diane P. Wood, and David F. Hamilton voted to grant rehearing en banc.

Accordingly, the petition for rehearing and rehearing en banc is DENIED.

ROVNER, *Circuit Judge*, with whom Wood and Hamilton, *Circuit Judges*, join, *dissenting from the denial of rehearing en banc.* As the saying goes, hard cases make bad law. This is a hard case, with disturbing facts. But it is in just these cases that we must hold even faster to the legal precedents that guide us without the distortion made by challenging facts. In this case, that guiding precedent is a standard of review that leaves district court judges broad discretion to impose sentences within their reasoned judgment, and restricts appellate court judges from supplanting that judgment with their own. And with good reason. Although appellate court judges review a cold, entombed, inflectionless record, district court judges interact with a living, breathing case and the humans before them, viewing not only the strict contours of the statutes and facts, but also intangible matters—the demeanor of the defendant, the sincerity of his remorse, incentives that he had to change his path, the demeanor of those speaking in mitigation and the support they might add to rehabilitation efforts, and how a defendant's mental health may have waxed or waned over the course of the proceedings.

Sentencing is one of the hardest parts of a district court's job and I suspect that if we surveyed all ten of the current active judges in this Circuit, we would find that each of us would have imposed a different sentence had we been sitting as the district court judge in this case. The Supreme Court, however, has instructed that our review of a district court's sentence is limited to determining whether it is reasonable. [1]

---

[1] Errors in sentencing can be either procedural or substantive. We review the sentencing court's procedure *de novo*, and review the substantive reasonableness of a sentence only for abuse of discretion. *Warner*, 792 F.3d at

*Gall v. United States*, 552 U.S. 38, 46. (2007). We do not substitute our judgment for that of the district court. *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015). And that is the standard we have applied in case after case after case in this circuit. Until now.

Adel Daoud was charged with the horrific crime of attempting to detonate a bomb as a part of an FBI sting to uncover acts of terrorism in the United States. Almost immediately after arriving at the Metropolitan Correctional Center in Chicago he was charged with soliciting the murder of the FBI agent involved in the sting, although this too was part of a government operation which solicited the assistance of Daoud's cellmate. And a few years after that, he was charged with a serious stabbing assault on another inmate, after the victim drew pictures of the prophet Mohammed.[2] About one year after the assault, Daoud was diagnosed with schizophrenia and other mental health disorders. The proceedings extended for many years, in large part because Daoud was found to be mentally incompetent for a time. R. 216. [3] It was

---

855-56. It is undisputed that this case involves a challenge to the substantive reasonableness of the sentence.

[2] According to Dr Azzam Tamimi, former head of the Institute of Islamic Political Thought, "The Koran itself doesn't say anything, … but it is accepted by all Islamic authorities that the Prophet Muhammad and all the other prophets cannot be drawn and cannot be produced in pictures because they are, according to Islamic faith, infallible individuals, role models and therefore should not be presented in any manner that might cause disrespect for them." John McManus, *Have Pictures of Muhammad Always Been Forbidden?*, BBC News, Jan. 15, 2015, https://www.bbc.com/news/magazine-30814555.

[3] Record citations are to the district court docket in case No. 1:12-cr-00723-1

not until his mental health stabilized with medication that the proceedings were able to continue in 2018. R. 237. At that time, Daoud pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) which allows a defendant to enter a guilty plea, but continue to deny culpability. *See id.* at 37. In all, the district court judge presided over Daoud's proceedings for seven years.

The government requested a forty-year sentence; Daoud requested nine. The probation office recommended fifteen years and a lengthy period of supervision. The district court judge held an extensive four-day sentencing hearing at which both parties submitted voluminous evidence, all of which the District Court reviewed and considered. At the end, she sentenced Daoud to one year more than the probation office's recommendation—sixteen years, plus a hefty forty-five years of supervised release.

In sentencing Daoud, the district court judge considered the nature and circumstances of all three crimes, but particularly noted the violent and heinous nature of the attempted bombing, stating that "[t]he seriousness of this offense cannot be understated or downplayed." R. 342 at 495–96. She also seriously considered the solicitation of murder of an undercover FBI agent whose job it is to protect the public, as well as the violent attack on a fellow prisoner. *Id.* at 496, 499–500. And she emphasized the pre-meditated nature of the attack on his fellow inmate that occurred when the victim was sleeping. *Id.* at 500.

At the same time, she considered Daoud's social awkwardness and immaturity which she surmised had led the lonely seventeen-year-old boy to seek friendship and affirmation on line, and to "talk big" about things that ended up

sounding like juvenile nonsense—ideas such as using flying cars as a weapon of Jihad. *Id.* at 497. She considered his obedience to his parents, and religious leaders. *Id.* at 498. She concluded that the defendant was not mentally ill in 2012 when he agreed to detonate the bomb, and that he clearly understood what he was doing and believed it "would put him in a place of favor with the Prophet Muhammad, Allah himself, or his religion." *Id.* at 498. She also, however, considered his mental instability and diagnoses. *Id.* at 499, 502, 506. She considered the abuse by his cellmate. *Id.* at 499. She considered the 400 days he spent in special housing and the traumatic effect of witnessing his cellmate's suicide. *Id.* at 502. And of course she considered the entirety of her own experience with Daoud over the seven years that she presided over his case.

Despite the district court's careful consideration, the panel vacated and remanded the district court sentence (and took the unusual step of reassigning the case on remand to a different judge, despite the lack of such a request by the government). The effect of that decision is that the panel necessarily found that sentence was plainly unreasonable, and that no reasonable jurist would have sentenced Daoud to this term. *Gall*, 552 U.S. at 46; *United States v. Purnell*, 701 F.3d 1186, 1189 (7th Cir. 2012). Given the care and thoroughness with which the district court considered Daoud's sentence, I find that position untenable.

The Supreme Court decision in *Gall* provides a close comparison for the situation before the court here. In *Gall*, the Court reviewed the appellate panel's reversal and remand to the district court for sentencing. The appellate court in *Gall* did not approve of the district court's light sentence. It concluded that the district court gave too much weight to the

defendant's withdrawal from the conspiracy, to his age and immaturity, and to his post-offense rehabilitation. The appellate court also asserted that the district court gave too much weight to some mitigation factors and did not "properly weigh" the seriousness of the defendant's offense. *Gall*, 552 U.S. at 45. The appellate court's objection to the district court's sentence in *Gall* is remarkably similar to that of the panel's objections here—particularly the appellate court's disapproval of the weight the district court gave to the defendant's immaturity at the time of the crime and later rehabilitation, and its concern that the district court did not properly account for the severity of the crime. Nevertheless, the Supreme Court emphasized that

> [t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record … The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

*Gall*, 552 U.S. at 51–52.

We have echoed *Gall's* deferential standard of review time and again, in various words and phrases. *See, e.g., United States v. Dawson*, 980 F.3d 1156, 1165 (7th Cir. 2020) (noting

that an appellate court's review of the substantive reasonableness of a sentence is highly deferential, asking only whether the sentence was plainly unreasonable); *United States v. Durham*, 967 F.3d 575, 580 (7th Cir. 2020) (same); *United States v. De La Torre*, 940 F.3d 938, 954 (7th Cir. 2019) (noting that if a district court's sentencing is procedurally sound and the judge adequately explained the reasons for the sentence, the appellate court's "only task, then, is to review whether the district court abused its discretion."). "The issue is not whether we would reach the same decision as the district court but whether the district court's reasoning process and result were within broad bounds of reasonableness." *Purnell*, 701 F.3d at 1189. That means that an appellate court must uphold any sentence where the judge offers an adequate statement of his reasons that is both logical and consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a). *United States v. Bonk*, 967 F.3d 643, 650 (7th Cir. 2020). We cannot overturn a district court's discretion in sentencing unless we find that the court "resolve[d] a matter in a way that no reasonable jurist would." *Purnell*, 701 F.3d at 1189. Although a district court that imposes a sentence outside of the Guidelines range must indeed explain the decision, it need not give an "extraordinary" justification. *Gall*, 552 U.S. at 47, *United States v. Morgan*, No. 19-2737, 2021 WL 365832, at *3 (7th Cir. Feb. 3, 2021). It need only give "serious consideration" and provide "sufficient justifications" to support the sentencing determination. *United States v. Brown*, 610 F.3d 395, 398 (7th Cir. 2010). This court, as a reviewing court may not apply a heightened standard of review or a presumption of unreasonableness to sentences outside the Guidelines range. *Peugh v. United States*, 569 U.S. 530, 537 (2013).

In addition to describing our review as "highly deferential," we have described the sentencing judge's discretion as "broad" and "considerable." *See, e.g., United States v. Cunningham*, 883 F.3d 690, 701 (7th Cir. 2018) (noting that factors "'are broad, vague, and open-ended,' leaving the sentencing judge with 'considerable discretion to individualize the sentence to the offense and offender as long as the judge's reasoning is consistent with § 3553(a).'"); *United States v. Gries*, 877 F.3d 255, 261 (7th Cir. 2017) ("District judges have broad discretion to prioritize and weigh the relevant sentencing factors under 18 U.S.C. § 3553(a). Appellate review for reasonableness is highly deferential."); *United States v. Bloom*, 846 F.3d 243, 257 (7th Cir. 2017) ("sentencing judges have had broad discretion to impose non-guideline sentences by weighing the factors under § 3553(a)."); *United States v. Deberry*, 576 F.3d 708, 711 (7th Cir. 2009) (a judge has "broad discretion to deviate from the guidelines in sentencing a defendant.").

We have noted repeatedly that we may not reweigh § 3553(a) factors. *De La Torre*, 940 F.3d at 954; *United States v. Baker*, 445 F.3d 987, 991–92 (7th Cir. 2006); *United States v. Newsom*, 428 F.3d 685, 687 (7th Cir. 2005) ("The question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a).").

We have emphasized, time and again, that substantive "reasonableness" in the context of sentences "occupies a range, not a point, and that the sentencing judge is in the best position to apply the § 3553(a) factors to the individual defendant." *United States v. Castro-Aguirre*, 983 F.3d 927, 943 (7th Cir. 2020) (citing *Warner*, 792 F.3d at 856); *United States v. Wachowiak*, 496 F.3d 496, 751 (7th Cir. 2007), (abrogated on other grounds by *Nelson v. United States*, 555 U.S. 350 (2009)

which held that a district court must not begin with a presumption in favor of a Guideline sentence.). When conducting a reasonableness review of a sentence, just as with other reviews for reasonableness, we define something as unreasonable only if it is a sentence lying "well outside the boundaries of permissible differences of opinion." *Wachowiak*, 496 F.3d at 750; *see also United States* v. *Wallace*, 458 F.3d 606, 610 (7th Cir. 2006). The number of ways in which we have emphasized how substantial our deference must be are too many to reiterate.

The *Wachowiak* decision, however deserves magnification here. In that case, the appellate panel, like the one here, and the one in *Gall*, expressed disapproval of what it considered to be a lenient sentence the district court had granted to the defendant. The panel disagreed with some of the district court's reasoning; it did not think that the 70-month sentence adequately reflected the seriousness of the defendant's offense (which consisted of downloading and sharing child pornography). It implied that it would likely have imposed a greater sentence. Nevertheless, despite the panel's dissatisfaction with the sentence and the reasoning, the panel constrained its reach and upheld the district court's sentence, noting its very limited reasonableness review. "If the justification is consistent with § 3553(a) and reasonably corresponds to factors unique to the defendant (*i.e.*, not normal incidents of the offense or the judge's wholesale disagreement with the guidelines), and the sentence chosen is within the broad range of objectively reasonable sentences in the circumstances, the sentence will be affirmed." *Wachowiak*, 496 F.3d at 750. That panel went on to stress the high level of deference with which we review a district court's sentence:

> The concept of substantive reasonableness contemplates a range, not a point. That said, we have declined invitations to fix the outer limits of the "reasonableness range" by reference to a ratio or percentage by which the sentence deviates from the guidelines range. We will not substitute our judgment for that of the sentencing court. *United States v. Ngatia*, 477 F.3d 496, 501–02 (7th Cir.2007) ("[T]he district court's choice of sentence, whether inside or outside the guideline[s] range, is discretionary and subject therefore to only light appellate review."); *United States v. Williams*, 425 F.3d 478, 481 (7th Cir.2005) ("The question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a).... We are not sentencing judges."). As with other discretionary decisions, the district court is institutionally better situated to make individualized sentencing judgments than an appellate panel.

*Wachowiak*, 496 F.3d at 751 (some internal citations omitted). Similarly this court in *Warner*, noted that it may have weighed some 3553(a) factors differently than did the district court, but it clung fast to its role on review and looked to see only if the district court's justification for the sentence was sufficient. *Warner*, 792 F.3d at 856, 858, 862. In short, before we set aside a district court's sentencing determination, we must have a far greater reason to do so than our own disagreement—even a strong disagreement.

Of course, in most of these decisions it was the defendant who appealed the imposition of the sentence and argued for

re-sentencing. Here we have the more unusual situation in which the government appeals the sentence as inadequate. I fear that the panel opinion in this case may inadvertently send a message that when a criminal defendant appeals what he alleges is an unfair sentence, we apply an exceptionally deferential standard of review, deferring to any rational explanation by the district court. But when the government disagrees with a district court's too-low sentence, an appellate panel will carefully re-analyze the nature of the crime, re-assess the facts, re-balance the evidence, and re-weigh the mitigating factors against the facts of the crime. Or perhaps the message is that we apply a different standard of review to cases involving terrorism or other heinous crimes. That cannot be so. There will always be cases before us with alarming offenses, frightening defendants, and particularly vulnerable or sympathetic victims. That does not alter the standard of review or enhance the appellate court's role. The § 3553(a) factors provide for these types of considerations, and it remains the district court's responsibility to apply them as warranted as part of the sentencing decision.

The government's petition for rehearing argues that a deferential review for substantive reasonableness cannot be so deferential as to effectively insulate the sentence from meaningful review. But the cases the government cites in which appellate courts have reversed district court sentences involve cases where the district court's reasoning was truly "odd" or completely ignored a sphere of consideration such as "considerations of deterrence and desert." *See, e.g.*, *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007) (where even the district court admitted that its balancing was "odd"). These are cases in which the district court judge completely failed to "consider and weigh the factors that bear on its exercise" of

discretion. *See, e.g.*, *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007), (superseded by *Dean v. United Sates*, 137 S. Ct. 1170 (2017)) (the district court judge relied on factors that are unrelated to the sentencing factors or § 3553, and put all of the weight in factors that were equivocal, at best). Or they are cases in which the court considered the ordinary incidents of conviction—such as restitution and the social stigma of being a felon—as factors in mitigation of the sentence. *United States v. Repking*, 467 F.3d 1091, 1096 (7th Cir. 2006). Moreover, in these cases, the sentences were jaw-droppingly short in light of the crime: In *Goldberg*, the court imposed a one day sentence out of a recommended 63-78 months for a young adult child of a prosperous family who downloaded and shared hundreds of photographs of child pornography, including pictures of very young children. *Id.*, 491 F.3d at 671. In *Repking*, the court issued a one day sentence out of a recommended 41-51 months for a bank president who misappropriated almost one million dollars. *Id.*, 467 F.3d at 1091–92, 1094. And the *Roberson* court sentenced the defendant to one month in lieu of a recommended sentence of 46–57 months for an armed robber/gang member on probation who refused to cooperate. *Id.*, 474 F.3d at 434–35. The district court in this case, however, did not drive off the road; it just chose a different lane.

It is true that the panel articulated the appropriate standard of review, but it is possible for a court to articulate the proper standard of review and deviate in its application. As the Supreme Court noted in *Gall*, "[a]lthough the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled *de novo* review of the facts presented and determined that, in its view, the degree of variance was not

warranted." *Gall*, 552 U.S. at 56. Here too, after reciting the correct standard of review, the panel slid into a weighing exercise—placing the seriousness of the facts, and the need to protect the public, on one side of the scale and weighing it against the reasonableness of the sentence. There is perhaps no greater tell that the panel re-weighed the factors within the district court's province than its own words: the mitigating factors, it concluded "could not bear the heavy weight that [the court] assigned to them, given the facts of the case." Panel Op. at 16. *See, e.g., Id.* at 25 ("And the other factors that the court found mitigating—Daoud's college aspirations and family support—were not weighty enough to justify the extent of the downward departure.")

The panel agreed that the district court put factors describing the seriousness of the crime on one side of the scale: the "violent and heinous act," the potential loss of human life, the threat to law enforcement, and the danger his maligned religious beliefs held. Panel Op. at 16. The panel, however, did not agree with the weight the district court gave to the other arm of the scale—Daoud's immaturity, his lack of knowledge or competence to carry out an attack on his own, his mental health and abuse at the hands of a fellow inmate, and his current aspirations and respectful demeanor. Panel Op. at 19–21. But whatever weight we might give to each of these factors, it is not ours to measure. *De La Torre*, 940 F.3d at 954. The panel opinion declared that the district court "negated" its own statements about the severity of the crime by listing factors in mitigation. Op. at 16–17. But this is exactly what district courts do—list factors favoring lengthier sentences and then catalogue the factors that favor mitigation. The mere cataloguing of mitigating factors does not "negate the[] statements and the severity of the violent crimes." Panel Op. at 16.

In fact, § 3553(a) commands the consideration of mitigating factors.

The panel's complaint appears to be that the district court considered too many mitigating facts, or perhaps, gave too much weight to the mitigating facts it considered. And it is true that the district court published more facts in favor of mitigation than the panel did. For example, the district court considered the fact that the undercover agent testified that Daoud had neither the means nor predisposition to commit the crime. R. 342 at 498; R. 340 at 412. And the district court also considered the fact that Daoud was concerned about disobeying his parents and his religious leader, the latter of whom had specifically advised Daoud against violent Jihad, after Daoud sought his counsel. R. 342 at 498; R. 339 at 160. The district court judge spent more time considering Daoud's mental health, including the fact that the solicitation and assault occurred before treatment, and the changes that she observed after he had been treated with medication. R. 342 at 492, 501–502. The appellate panel omits some of these details. But the panel can hardly complain that the district court considered too many facts in favor of mitigation. Our cases at times criticize district courts for failing to consider § 3553(a) factors sufficiently, but I am unable to find any that chastise a district court for considering too many. *See, e.g.*, *United States v. Jones*, 798 F.3d 613, 617–18 (7th Cir. 2015) ("a sentencing judge must address the defendant's principal arguments in mitigation unless they have no legal merit") (citing *United States v. Cunningham*, 429 F.3d 673, 678–79 (7th Cir. 2005)). And the acceptable boundaries for weighing § 3553(a) factors are broad. *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013).

The appellate panel criticized the district court's "sanitized" account of the crime, and instead chose more passionate descriptions of Daoud's crimes: "extraordinary disregard for human life," "voraciously consumed terrorist materials,' "excitedly participated in [the] plot". Panel Op. at 17. But the district court's measured language was calculated and purposeful. She declared from the start her goal was to rid the sentencing proceedings of the kind of rhetoric and "fever pitch" that had been burning on both sides of the case since it began. R. 342 at 495. "What this Court is not relying on in this case is some of the hyperbole and the hysteria that saturates some of the presentations by counsel for both sides." *Id.* at 494. As the sentencing judge explained, "this Court need not rely on salacious terms to find the crimes the defendant has pled guilty to are all serious and deserve serious sentences." *Id.* at 496.

The district court's measured accounting of the crimes is not evidence that the sentence lacked reasonableness, that it was so devoid of logic and a connection to the facts so as to warrant an exception to the deference we have given time after time when defendants are sitting in the appellants' seat and asking this court to take a second look at the facts and reweigh the evidence. We cannot possibly say that the district court failed to give "serious consideration" or provide "sufficient justification." *Gall*, 552 U.S. 46; *Brown*, 610 F. 3d 398. The district court judge considered every factor at play, reviewed every pleading, examined all of the evidence, and gave thoughtful, reasoned justifications for the sentence.

In fact, the district court sentenced Daoud to one year longer than the recommendation of the probation office. Of course the recommendation of a probation office is not

binding on the court. *United States v. Dawson*, 980 F.3d 1156, 1166 (7th Cir. 2020). But we can certainly consider a recommendation of a probation office that is well-versed in appropriate sentences and risk of recidivism when considering the reasonableness of a sentence. In other contexts we are quick to rely on the reasonableness of the probation office. *See, e.g., United States v. Lee*, 950 F.3d 439, 449 (7th Cir. 2020) (noting, albeit in a post-sentence context, that we "assume probation officers will make recommendations in a reasonable manner."). The pre-sentence investigation reports and recommendations were extensively researched. And sixteen years, after all, is not an insignificant amount of time in a young adult life. By the time Daoud is released at age 33, he will have spent half of his life in prison, and all of his young adulthood. And, as the Supreme Court has reminded us, the requirements of supervised release impose a substantial restriction on liberty. *Gall*, 552 U.S at 48. *Warner*, 792 F.3d at 860.

Once again, we note that the district court presided over this complex case for seven years. That court had the unique ability, to look not only at the record evidence before it, but also other intangible matters—the demeanor of the defendant, an assessment of the sincerity of Daoud's remorse, incentives that Daoud had to change his path, the demeanor of those who spoke in mitigation and the support they might add to rehabilitation efforts, and how his mental health may have waxed or waned during the time in which he appeared before the court. The court considered the fact that Daoud could be a danger in the future should he fail to comply with his medication or should his mental health take a turn for the worse and thus imposed 45 years of supervised release. The district court gave serious consideration to the Guidelines and provided sufficient justifications for the sentence. That is all

that is required. And the role of the appellate court is to review the district court's sentence for reasonableness only. To reverse under these circumstances would be to signal that this court applies one standard of review to defendants seeking to overturn sentences that they argue are too severe, and a different, far less deferential review to the government when it seeks to overturn a sentence it considers to be too lenient.

We must not fall into the trap of allowing sensational, frightening or abominable crimes to alter the division of labor and review established by the Supreme Court, or give way to the temptation of supplanting another judge's reasoned judgment with our own when we think we have the better view. We must defer to the district court's sentence unless no reasonable jurist could have issued the same sentence. Undoubtedly some judges on this court would have imposed a much higher sentence for Daoud. The district court's judgment was thoughtful, thorough, considered, and devoid of the hype that had infiltrated the case from both sides. To call it "unreasonable" would be to alter our longstanding understanding of the bounds of reason.