In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1362

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAUL AMBRIZ-VILLA, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4:19-cr-40095 — **J. Phil Gilbert**, *Judge.*

_____

ARGUED OCTOBER 26, 2021 — DECIDED MARCH 14, 2022

_____

Before FLAUM, ST. EVE, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Following a traffic stop, Raul Am-briz-Villa, Jr., was arrested after he agreed to a search of his car that turned up nearly 13 kilograms of methamphetamine. Ambriz-Villa moved to suppress the drugs; the district court denied his motion and, following his guilty plea, sentenced him to 168 months' imprisonment. Ambriz-Villa preserved the right to appeal the denial of his suppression motion and the sentence imposed.

On appeal, Ambriz-Villa argues that both the traffic stop and the subsequent search of his car violated his Fourth Amendment rights. First, he argues that the scope and manner of the stop was unreasonable, and thus unlawful under the Fourth Amendment. Second, he contends that the search was unlawful, either because his consent to search was tainted by an unlawful stop or, even if the stop was lawful, his consent was not voluntary. He also argues that his resulting sentence was both procedurally erroneous and substantively unreasonable.

We disagree. The stop was not unlawful, and Ambriz-Villa voluntarily consented to the search, which was not tainted by the stop. Further, we find no procedural error with the district court's sentencing decision and conclude that Ambriz-Villa's sentence is substantively reasonable. Finding no error, we affirm.

I

A grand jury indicted Raul Ambriz-Villa, Jr., for possession with intent to distribute at least 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Ambriz-Villa moved to suppress the drugs. The district court conducted a hearing during which it watched the dash-cam video footage of the events and heard testimony from the Illinois state trooper who executed the traffic stop and search of Ambriz-Villa's car, then found the facts as follows.

Ambriz-Villa drove past Illinois State Trooper John Payton on I-57, where Trooper Payton was parked in his patrol car. Trooper Payton, who is specially trained in drug interdiction, made several observations about Ambriz-Villa's car which led him to suspect potential drug trafficking activity. When

Ambriz-Villa's car crossed the solid white line on the shoulder of the road, Trooper Payton executed a pretextual traffic stop. As was his custom, Trooper Payton asked Ambriz-Villa to sit in the front seat of the patrol car as a safety measure for the duration of the traffic stop. While processing a warning for the traffic violation, Trooper Payton asked Ambriz-Villa about his background and purpose for traveling. Ambriz-Villa said he owned a tire shop in Nebraska and was driving to Georgia for his nephew's birthday and that the rest of his family had flown down. When asked why he chose to drive alone, Ambriz-Villa "floundered nonresponsive," and then when asked again, stated that it was because he liked to drive. Still processing the warning, Trooper Payton asked more questions. Throughout this conversation, Ambriz-Villa's unusual responses and excessively nervous and evasive reactions raised Trooper Payton's suspicion that Ambriz-Villa was involved in criminal activity.

After processing the warning, Trooper Payton handed it to Ambriz-Villa, who then opened the door and began to exit the patrol car. When Ambriz-Villa was "halfway out the door," Trooper Payton asked, "Do you mind if I ask you a few more questions?" Ambriz-Villa agreed, and Trooper Payton then asked whether he was involved in any drug activity (which Ambriz-Villa denied) and if he would consent to a search of his car. Ambriz-Villa said yes. Trooper Payton asked again "for clarification", and Ambriz-Villa again confirmed that he consented to the search of his car. The search uncovered 13 packages (roughly one kilogram each) of methamphetamine.

The district court denied Ambriz-Villa's motion to suppress, finding that the scope of the stop was not unreasonable

and thus did not violate Ambriz-Villa's Fourth Amendment rights. The district court also found that Trooper Payton's tone and behavior did not suggest coercion and that Ambriz-Villa's consent was voluntary because "a reasonable person in Ambriz-Villa's position—with one foot out the door and a warning ticket in hand—would feel at liberty to disregard the questions and walk away."

At his sentencing hearing, Ambriz-Villa requested a departure from the Sentencing Guidelines range, arguing that his drug trafficking was aberrant behavior. The judge rejected this argument, saying "even assuming this was the first time you did this, it does not amount in my mind under the [G]uidelines as aberrant behavior." The district court also considered the sentencing factors listed in 18 U.S.C. § 3553(a) but concluded none warranted a variance below the Guidelines range and thus imposed a within-Guidelines prison sentence of 168 months.

## II

On appeal, Ambriz-Villa challenges the lawfulness of the stop, the search, and his sentence. We take each argument in turn.

## A

Ambriz-Villa contends that the scope and manner of the traffic stop exceeded the bounds of reasonableness, in violation of his Fourth Amendment rights. Separately, he argues that the warrantless search of his car was unreasonable because his consent to search it was invalid. As a result, he argues, the drugs found in his car should be suppressed. When reviewing a motion to suppress, we review the district court's factual determinations for clear error and the district court's

legal conclusions, including the reasonableness of a stop, de novo. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021); *United States v. Gholston*, 1 F.4th 492, 496 (7th Cir. 2021).

1

Ambriz-Villa concedes that Trooper Payton was permitted to stop him based on the traffic violation but argues that the scope and manner of the stop was unreasonable because Trooper Payton asked him repetitive and persistent questions not tailored to the reason for the initial stop while he was in the confines of the patrol car. But Trooper Payton was permitted to ask Ambriz-Villa questions unrelated to the reason for the stop without reasonable suspicion of other criminal activity, even if the questioning was repetitive and persistent, so long as the questioning did not prolong the duration of the stop, which Ambriz-Villa does not contest on appeal. See *Cole*, 21 F.4th at 429 ("[A]n officer may ask questions unrelated to the stop … if doing so does not prolong the traffic stop."). And it makes no difference that Ambriz-Villa was in the patrol car during the questioning. Trooper Payton was permitted to ask Ambriz-Villa to sit in the patrol car while he wrote the warning. See *United States v. Lewis*, 920 F.3d 483, 492 (7th Cir. 2019) (an officer may ask a driver to sit in his patrol car during a valid traffic stop, without any particularized suspicion). Ambriz-Villa provides no authority for the proposition that the legality of an officer's questioning differs whether it is done while the traffic offender is outside the patrol car or in it, and we could find none. Ambriz-Villa was free to respond to the questions, or not, and he makes no argument that he felt coerced into answering these questions. See *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984) (stating that at a traffic stop, "the detainee is not obliged to respond"). What matters is that

Trooper Payton's questioning did not prolong the duration of the traffic stop. We agree with the district court that the scope and manner of the stop did not violate Ambriz-Villa's Fourth Amendment rights.

2

Ambriz-Villa next argues that his verbal consent to search his car was tainted because the scope and manner of the stop was overly intrusive and expansive. But as we discussed above, the traffic stop was lawful so his consent to search was not tainted by an unlawful stop. And there was no impermissible extension of the stop because the traffic stop concluded when he received the warning. See *United States v. Rivera*, 906 F.2d 319, 323 (7th Cir. 1990) (finding defendant was not in custody after he was given his written warning, "had all his identification, he was told that the investigation was over, he was free to leave at his pleasure and, indeed, was leaving when the trooper popped the question of consensual search").

Ambriz-Villa also argues that his consent was not voluntarily given. To evaluate voluntariness of consent to a search, we look to the totality of the circumstances, considering the following factors: "(1) the person's age, intelligence, and education; (2) whether he was advised of his constitutional rights; (3) how long he was detained before he gave his consent; (4) whether his consent was immediate, or was prompted by repeated requests by the authorities; (5) whether any physical coercion was used; and (6) whether the individual was in police custody when he gave his consent." *United States v. Figueroa-Espana*, 511 F.3d 696, 704–05 (7th Cir. 2007).

Ambriz-Villa argues that when he was exiting the patrol car to return to his car with the warning violation in his

possession, no reasonable person would have felt free to ignore the trooper's question and simply walk away. But under the totality of the circumstances, Ambriz-Villa's consent was freely given. Ambriz-Villa was in fact leaving: it is undisputed that Trooper Payton had handed him the warning ticket and that Ambriz-Villa was exiting the police car at the time the consent to search was sought. As noted above, in *Rivera*, a case with very similar facts, we found that a reasonable person in a comparable position would have felt free to leave at this point of the interaction. 906 F.2d at 323. Furthermore, the interaction took place on a public interstate highway during the day; Trooper Payton showed no weapons or other physical force; and the language and tone were limited to a series of targeted questions and confirmed whether a search would be allowed.

## B

Next, Ambriz-Villa challenges his sentence, both for procedural error and as substantively unreasonable. We review the district court's sentencing decision for procedural error de novo and the substantive reasonableness of the sentence for abuse of discretion. *United States v. Patel*, 921 F.3d 663, 669 (7th Cir. 2019).

## 1

Ambriz-Villa argues that his criminal behavior was aberrant and that the district court committed procedural error by considering only the Sentencing Guidelines' definition of aberrant behavior in policy statement § 5K2.20 in deciding that Ambriz-Villa's behavior did not warrant a departure from the applicable Guidelines range. But there's no indication that the

judge believed he was confined to the Guidelines' definition of aberrant behavior in deciding Ambriz-Villa's sentence.

It is perfectly acceptable for a district judge to use the Guidelines as a reference when deciding whether to depart from the Guidelines range so long as the judge does not treat the Guidelines as mandatory. See *United States v. Townsend*, 724 F.3d 749, 751–52 (7th Cir. 2013). There is no indication here—and Ambriz-Villa points to none—that the district judge concluded that he was forbidden from considering Ambriz-Villa's argument or circumstances due to a Guidelines definition or policy statement. True enough, the judge concluded that Ambriz-Villa's conduct did not satisfy § 5K2.20. But that was not the end of the judge's consideration of Ambriz-Villa's circumstances. Rather, in weighing the 18 U.S.C. § 3553(a) factors, the judge considered his argument that his behavior was aberrant and rejected it. *Id*. at 752 ("The sentencing transcript shows that the judge gave thoughtful consideration not only to § 5K2.20 but also to the possibility, independent of § 5K2.20, that [the defendant's] crimes were aberrational."). The judge acknowledged that Ambriz-Villa was "not a bad person, but [had] made a bad choice" and knew what he was doing. The judge weighed heavily that "even assuming this was the first time" Ambriz-Villa had transported drugs, the quantity of drugs was not only high, but the distance traveled was also substantial and reflected the calculated nature of the crime. As in *Townsend*, the judge's approach was free from legal error.

2

Finally, we turn to Ambriz-Villa's argument that the term of his sentence—though within-Guidelines for his offense—was outside the bounds of a reasonable balancing of the §

3553(a) factors. A within-Guidelines sentence is presump-tively reasonable. See *Patel*, 921 F.3d at 672. Ambriz-Villa may rebut this presumption only by showing that his sentence does not comport with the § 3553(a) factors. *Id.* To this end, Ambriz-Villa stresses to us that he has strong factors in favor of mitigation. But we do not re-weigh the factors on appeal. Rather, our review is limited to ensuring the sentence is "log-ical and consistent" with the factors. *United States v. Bonk*, 967 F.3d 643, 650 (7th Cir. 2020). Here, the district court consid-ered the § 3553(a) factors, concluding the facts did not "war-rant a variance below the Guidelines range." The judge noted that Ambriz-Villa was moving a considerable quantity of drugs—nearly three times the amount required to establish a baseline offense—and that prior community supervision had not successfully deterred his criminal conduct. The district court logically applied the factors, and to hold otherwise would require us to first weigh the facts differently. That we will not do.

AFFIRMED